COMMON CAUSE, et al., Plaintiffs,

v.

FEDERAL ELECTION
COMMISSION, Defendant.

Civ. A. No. 86–1838.

United States District Court,
District of Columbia.

Aug. 3, 1987.

Roger M. Witten, Shelia C. Cheston, W. Hardy Callcott, Wilmer, Cutler & Pickering, Washington, D.C., for plaintiffs.

Lisa E. Klein, Federal Election Com'n, Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter comes before the court on cross motions for summary judgment. In this action, plaintiffs Common Cause and certain named members (hereinafter "Common Cause") challenge a Federal Election Commission ("FEC" or "Commission") decision denying a Petition for Rulemaking that Common Cause filed on November 7, 1984.

### I. *Background*

In its Petition, plaintiff Common Cause alleged that there were violations of the Federal Election Campaigns Act ("FECA"), 2 U.S.C. § 431, *et seq.*, associated with the use of "soft money" in connection with federal elections. Rulemaking Record Before the Federal Election Commission ("Record"), Exhibit A, Attachment 1. It its Petition, Common Cause defined "soft money" as:

... funds that are raised by Presidential campaigns and national and congressional political party organizations purportedly for use by state and local party organizations in nonfederal elections, from sources who would be barred from making such contributions in connection with a federal election, *e.g.* from corporations and labor unions and from individuals who have reached their federal contribution limits.

*Id.* Common Cause further alleged that this "soft money" was not being raised or spent solely for nonfederal election purposes, but was instead "being channeled to state parties with the clear goal of influencing the outcome of federal elections." *Id.*

Upon receipt of Common Cause's petition, the General Counsel of the Commission recommended that a Notice of Availability be published in the Federal Register, giving interested parties 30 days in which to comment on the Petition. The General Counsel further recommended that the Petition be sent to the Internal Revenue Service, seeking its comments. Record, Attachment 2. The Commission adopted both recommendations. A Notice of Availability was published, and a copy of the Petition was sent to the IRS, as well as to the Democratic Senatorial Campaign Committee and Democratic Congressional Campaign Committee, the National Republican Senatorial Campaign Committee, the Republican National Committee, the Democratic National Committee, and the National Republican Congressional Campaign Committee. Record, Attachments 9–13. The FEC received five comments. Record, Attachments 15(a)–(e).

On December 5, 1985, the General Counsel recommended to the Commission that it "seek information and comment on the factual and legal issues raised in the 'soft money' discussion and hold hearings to determine whether problems do in fact exist of the nature alleged by Common Cause." Record, Attachment 18. Based on this recommendation, the Commission scheduled two days of public hearings, and approved a Notice of Inquiry for publication in the Federal Register. The Notice of Inquiry set forth in six pages of detail the allegations of Common Cause. Record, Attachment 21. Further, the Commission sent the Notice of Inquiry to 77 organizations, including state election officials and political party organizations. Record, Attachment 22. The Commission received 15 responses. Record, Attachments 23(a)–(*o*).

The Commission also received testimony from Common Cause, the Center for Responsive Politics, and the Republican National Committee. Record, Attachments 24(b), (c), (f), and 25.

On April 17, 1986, the Commission acted on plaintiffs' Petition, denying it as to each of 7 proposed revisions, and failing, by a 3–3 vote, to act as to an 8th proposed revision. In the Commission's Notice of Disposition, published in the Federal Register, it stated that:

> Common Cause has not presented evidence of instances in which "soft money" has been used to influence federal elections sufficient to justify the stringent rules proposed in its petition. Most of the examples it cites to support its allegations consist of anecdotal and boastful comments of party committee officials and campaign staff that have been quoted in the press. These statements do not constitute concrete evidence demonstrating that the Commission's regulations have been abused so that funds purportedly raised for use in nonfederal elections have in fact been transferred to the state and local level with the intent that they be used to influence federal elections.

Record, Attachment 30. It is this agency action which plaintiffs challenge in the present action.

## II. *Standard of Review*

This action is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which provides that agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" must be set aside by the reviewing court. The United States Court of Appeals for the District of Columbia Circuit has recently held that

> Review under the "arbitrary and capricious" tag line, however, encompasses a range of levels of deference to the agency, and [*Heckler v.*] *Chaney* [470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)] surely reinforces our frequent statements that an agency's refusal to institute rulemaking proceedings is at the high end of the range.

*American Horse Protection Assoc., Inc. v. Lyng*, 812 F.2d 1, 4–5 (D.C.Cir.1987) (citations omitted).

However, even where the court is required to defer to an agency, it must nevertheless take a close look at the agency's action, as well as the agency's articulated rationale. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). If, in making its decision, the agency considers factors that are statutorily irrelevant, *see, e.g., Farmworker Justice Fund v. Brock*, 811 F.2d 613 (D.C.Cir.1987) (holding that "Federalism" principles are irrelevant to Secretary of Labor's decision not to issue standards under the Occupational Safety and Health Act), the court need not defer to the agency's decision. Similarly, where the issue before the court is the correct construction of a statute, the United States Supreme Court has held that "the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694, *cited in INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987). Thus, in determining whether agency action is "otherwise not in accordance with law" under the APA, even under the high standard of deference applicable to denials of rulemaking, the court must measure the agency's construction of its statute against the overall purposes of the statute and the intent of Congress.

With these principles in mind, the court can now consider the motions for summary judgment.

## III. *Plaintiff's Motion for Summary Judgment*

In its motion for summary judgment, plaintiff Common Cause sets forth two theories under which it urges the court to set aside the Commission's actions. First, Common Cause contends that, as a matter of statutory construction, the FEC's interpretations of portions of the FECA pertain-

ing to the "soft money" issue are contrary to law and must therefore be set aside. Second, Common Cause contends that, given the material before the Commission in the form of comments and testimony, the denial of plaintiffs' rulemaking petition based on a supposed insufficiency of supporting evidence constituted arbitrary and capricious agency action that must also be set aside by the court on review.

### A. Statutory Construction:

With respect to statutory construction, Common Cause focusses on two aspects of the FEC's decision and argues that they are inconsistent with the Commission's enabling statute. First, Common Cause argues that the FECA's ban on the use of contributions from certain sources in federal elections is absolute, and that any use of nonfederal funds in connection with federal elections is a violation of the FECA—regardless of intent. Plaintiffs' Memorandum in Support of Motion for Summary Judgment at 20–29. Common Cause argues that the FEC improperly considered intent as a factor in its determination that non-federal funds have not "been transferred to the state and local level *with the intent that* they be used to influence federal elections." Notice of Disposition, Record, Attachment 30 (emphasis added). Common Cause suggests that the FEC has overlooked violations simply because there was no evidence of intent to influence federal elections, a statutorily irrelevant consideration.

■ Common Cause is correct in its interpretation of the FECA as an absolute ban on the use of certain funds in connection with federal elections. Common Cause errs, however, in reading so much into the FEC's use of the word 'intent' in its Notice of Disposition. The Commission's brief statement cannot fairly be read as making intent a critical or even relevant factor in the denial of rulemaking now at issue. Instead, the Commission's Notice of Disposition states clearly that "Common Cause has not presented evidence of instances in which 'soft money' has been used to influence elections sufficient to justify the strin-

gent rules proposed in its petition." Record, Attachment 30. The Commission determined not that there was an inadequate showing of intent to influence federal elections, but, more basically, that there was inadequate evidence of *any* use of "soft money" in the ways plaintiffs alleged in their Petition. Indeed, the Commission's word choice closely parallels Common Cause's language in its definition of "soft money," *see supra* at 1, and should not be given any greater significance than that.

Thus, plaintiffs' strained reading of the Commission's statement, as well as plaintiffs' extensive discussion of the history and meaning of the FECA, are largely irrelevant to the present inquiry. A misreading of the controlling statute by plaintiffs cannot itself form the basis for a challenge to the Commission's actions as "otherwise not in accordance with law." The court need not even reach the issue of the degree of deference appropriately paid to the FEC's interpretation, since the court may instead conclude that the parties are in agreement that intent is not a factor in enforcement of the FECA.

■ Common Cause's second challenge to the FEC's interpretation of the FECA has greater merit. Congress amended the FECA in 1979 to permit state and local party committees to spend money for campaign materials used for volunteer activities, voter registration, and "get-out-the-vote" activities. 2 U.S.C. §§ 431(8)(B)(x), 431(8)(B)(xii), 431(9)(B)(viii), 431(9)(B)(ix). The amendment provides that, with respect to these activities, state and local committees must *only* spend monies that are "subject to the limitations and prohibitions of this Act." 2 U.S.C. §§ 431(8)(B)(x)(2), 431(8)(B)(xii)(2), 431(9)(B)(viii)(2), 431(9)(B)(ix)(2). However, under the Commission's 1976 regulations, 11 C.F.R. §§ 102.5, 106.1, state and local political committees are permitted to spend money from both their federal and non-federal accounts to finance these activities, allocating "on a reasonable basis." 11 C.F.R. § 106.1(e). If, for example, a state committee spends monies to register voters in an election year in which both federal and

state/local offices are up for election, the state committee may determine what portion of its efforts affects the federal as opposed to the state/local elections, and may allocate monies from its separate accounts accordingly—with no guidance from the FEC.

In its Petition, Common Cause pointed to this allocation system (or lack thereof) as a source of "soft money" abuse. Common Cause alleged that, with no regulations on how to go about allocating monies from federal and nonfederal accounts, state party committees could use "soft money" for volunteer materials, voter registration, and "get-out-the-vote" efforts that would have a significant impact on federal as well as state/local elections. Indeed, the General Counsel noted this potential for abuse in its Draft Notice of Inquiry, which the Commission adopted, published, and distributed. Record, Attachment 18. In the Draft Notice, the General Counsel stated that:

> These statutory exemptions should not be used as a shield to spend nonfederal funds for the benefit of federal candidates, particularly through the use of allocation methods which permit a committee to expend funds raised for use in nonfederal elections and therefore free federal funds for contributions and expenditures.

*Id.*

Common Cause goes well beyond the General Counsel, and contends that the 1979 exemptions for certain state and local party committee activities, discussed above, represent a congressional determination that those activities necessarily have an impact on federal elections. Common Cause reasons from this premise that *no* allocation method is permissible under that Act, and that even exempt activities undertaken solely with respect to state elections must be paid for with "hard money."

This reading of the amendments goes too far. It is clear from the statute as a whole that the FECA regulates federal elections only. This limit on the FECA's reach underlies the entire act. Congress would have had to have spoken much more clearly

in the amendments at issue to contradict this. Moreover, as the Commission points out in its pleadings, the House Report on the amendments expressly contemplated allocation of funds with respect to the activities at issue, stating:

> If a State or local party organization prepares a slate card which includes both Federal and State candidates, the party organization may allocate or apportion the costs attributable to all the Federal candidates and all the State candidates. The portion of costs attributable to Federal candidates must be paid with funds subject to the prohibitions and limitations of the Act.

H.Rep. No. 422, 96th Cong., 1st Sess., 8 (1979), U.S.Code Cong. & Admin.News 1979, pp. 2860, 2867. *See also id.* at 9, U.S.Code Cong. & Admin.News 1979, p. 2868 (permitting similar allocation for campaign materials used for volunteer activities). With respect to voter registration and get-out-the-vote activities, the House Report speaks only of such activities "on behalf of the Presidential and Vice–Presidential nominees." Nothing in the language of these amendments suggests that they reach beyond federal elections and into the realm of state elections. Given this, it cannot be argued that allocation is as a whole barred by the amendments.

Common Cause is nonetheless correct that the FEC's failure to regulate improper or inaccurate allocation between federal and nonfederal funds with respect to these activities was contrary to law, since Congress stated clearly in the FECA that all monies spent by state committees on these activities vis-a-vis federal elections must be paid for "from contributions subject to the limitations and prohibitions of this Act." 2 U.S.C. §§ 431(8)(B)(x)(2), 431(8)(B)(xii)(2), 431(9)(B)(viii), 431(9)(B)(ix)(2). That is, with respect to federal elections, "soft money" cannot properly be used for these activities under the FECA.

In his recommendations to the Commission at the close of the comment period, and after public hearings on plaintiffs' Petition, the General Counsel recommended denying Common Cause's Petition. Yet, he

also urged the Commission to revise its rules on allocation, "to resolve several questions that have arisen concerning their application." Record, Attachment 26 at 11. The General Counsel noted that:

> The current regulations leave a great deal of discretion to the [state or local political] committee in choosing a method to allocate its expenses and provide little guidance on what methods the Commission considers to be appropriate.... Moreover, committees are not currently required to report the method used to allocate their expenses. There is therefore no way to routinely determine whether committees are allocating their expenses in a manner that accurately reflects the effort that an activity has on federal elections.

*Id.* at 11–12. These conclusions by the General Counsel echo Common Cause's allegations in the Petition before the Commission. It was these recommendations on which the Commission failed to act on by a vote of 3–3. Record, Attachment 28 at 18.

The plain meaning of the FECA is that any improper allocation of nonfederal funds by a state committee would be a violation of the FECA. Yet, the Commission provides no guidance whatsoever on what allocation methods a state or local committee may use; the potential for abuse, intended or no, is obvious. Thus, a revision of the Commission's regulations to ensure that any method of allocation used by state or local party committees is in compliance with the FECA is warranted. This is especially so given the General Counsel's strongly worded recommendations. *See* Record, Attachment 26. Indeed, it is possible that the Commission may conclude that *no* method of allocation will effectuate the Congressional goal that *all* monies spent by state political committees on those activities permitted in the 1979 amendments be "hard money" under the FECA. That is an issue for the Commission to resolve on remand.

This conclusion is proper even under the standard of review applicable to denials of rulemaking. As the court stated in *Ameri-*

*can Horse Protection v. Lyng, supra,* an agency's denial of rulemaking is entitled to great deference. 812 F.2d at 4–5. However, where the agency interprets its statute in a way that flatly contradicts Congress's express purpose, the court may—indeed must—intervene and correct the agency. *Chevron, supra,* 104 S.Ct. 2782 n. 9. Here, the FECA unambiguously requires that state party committee money spent for the limited purposes set forth in the 1979 amendments—volunteer materials, voter registration, and "get-out-the-vote" activities—must be paid for *solely* from funds subject to the limitations and prohibitions of the FECA. It is not for the Commission to evade that mandate by permitting a variety of allocation methods and providing no guidance or supervision to those in whose interest it is to use as much "soft money" in federal elections as they can. Such agency interpretation of the statute it is designated to enforce is entitled to no deference, and must be set aside.

However, the court need not go so far as to order the Commission to adopt the proposals of Common Cause, which appear to go beyond what the FECA requires in this area. Instead, the court need only require the Commission to review Common Cause's Petition for Rulemaking in light of this opinion, with an eye to revising 11 C.F.R. §§ 102.5 and 106.1, as they relate to the portions of the 1979 FECA amendments discussed above.

### B. The Commission's Alleged Arbitrary and Capricious Conduct:

██ Finally, Common Cause contends that as to all the issues raised in its Petition, there was ample evidence to justify a rulemaking, and that failure to so find was arbitrary and capricious on the part of the Commission. Here, the court must disagree. The Commission opened its doors to comments from each of the fifty state election finance agencies, as well as both major parties and various other groups interested in the issue of campaign financing. Only fifteen responses were received, some of which adamantly stated that there were no abuses of the type alleged by Common Cause. Indeed, there was testimony that

some of the anecdotes submitted by Common cause were factually erroneous. Agency action will be held to be arbitrary and capricious only in exceptional situations of egregious error, and a review of the record makes clear that it was not arbitrary and capricious for the Commission to decline to initiate a rulemaking based on the evidence before it, except with respect to the allocation issue discussed above.

### IV. *The Commission's Motion for Summary Judgment*

The FEC moves for summary judgment affirming its decision to deny plaintiffs' Petition. For the reasons set forth above with respect to Common Cause's motion, such relief is proper as to all issues except that of allocation between federal and non-federal accounts of state party committees of expenses of voter registration and other limitedly exempt activities, as discussed above.

An appropriate Order accompanies this Memorandum.

### ORDER

This matter comes before the court on cross motions for summary judgment. Upon consideration of the motions, the oppositions thereto, and the entire record herein, and for the reasons stated in the accompanying Memorandum, it is by the court this 3rd day of August, 1987

ORDERED that Plaintiffs' Motion for Summary Judgment is granted in part and denied in part; and it is further

ORDERED that Defendant's Motion for Summary Judgment is granted in part and denied in part; and it is further

ORDERED that this matter be and hereby is remanded to defendant Federal Election Commission, which is instructed to reconsider the Petition for Rulemaking of plaintiffs Common Cause, *et* al., in light of this court's Memorandum and Order of this date.