No. 95-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

COMMON CAUSE OF MONTANA, a state
organization of COMMON CAUSE,
a Washington, D.C., non-profit
corporation,

        Plaintiff and Appellant,

   v.

ED ARGENBRIGHT, in his capacity
as COMMISSIONER OF POLITICAL
PRACTICES of the State of Montana,
and the OFFICE OF THE COMMISSIONER
OF POLITICAL PRACTICES of the
State of Montana,

        Defendants and Respondents.

FILED

APR 23 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis & Clark,
                The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          James P. Reynolds (argued) and Deborah S. Smith;
          Reynolds, Motl & Sherwood, Helena, Montana

      For Respondents:

          Hon. Joseph P. Mazurek, Attorney General,
          James M. Scheier, Ass't Attorney General (argued)
          Helena, Montana

                   Submitted:  February 21, 1996

                     Decided:  April 23, 1996

Filed:

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to § 2-4-315, MCA, Common Cause filed a petition for rulemaking with the Commissioner of Political Practices (Commissioner) requesting the Commissioner to institute a rulemaking proceeding to clarify the definition of lobbying set forth in the Montana Lobbying Act, § 5-7-102(6), MCA. The Commissioner denied the petition. Common Cause then filed a complaint in District Court seeking declaratory relief and a peremptory writ of mandamus. The District Court granted the Commissioner's motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P. The court subsequently denied Common Cause's motion to alter or amend the judgment. Common Cause appeals from the order dismissing its complaint and the order denying its motion to alter or amend the judgment. We reverse and remand.

Common Cause presents the following issues on appeal:

1.  Does § 2-4-315, MCA, grant the Commissioner discretion to deny a petition for mandatory rulemaking under § 5-7-111, MCA, without first initiating rulemaking proceedings?

2.  Is Mandamus an appropriate remedy?

BACKGROUND

Since this matter was dismissed under Rule 12(b)(6), M.R.Civ.P., prior to the filing of a responsive pleading or the completion of any discovery, the only facts before the District Court were those alleged in Common Cause's complaint. As alleged in the complaint, the background leading up to this litigation is as follows: For many years Common Cause has worked to assure full public disclosure of the amounts of money that persons spend to

2

lobby Montana legislators and public officials. As part of this effort, Common Cause wrote and then worked to pass Initiative 85 revising Montana's Lobbying Act and requiring that lobbying expenditures be reported to the Commissioner.

The Lobbying Act states that one of its purposes is "to require disclosure of the amounts of money spent for lobbying." Section 5-7-101(1), MCA. In 1981, this Court recognized that the purpose of Initiative 85 was "to provide for the disclosure of money spent to influence action of public officials and to require elected officials to disclose their business interests." Montana Automobile Ass'n v. Greely (1981), 193 Mont. 378, 399, 632 P.2d 300, 311. In order to gauge how effectively the Lobbying Act was accomplishing this purpose, Common Cause conducted two surveys, one in 1984 and one in 1994. These surveys sought responses from principals as to their understanding of what activities constituted "lobbying" under the Lobbying Act and, thus, which expenditures concerning those activities were required, by law, to be reported. The survey results, which were appended to the complaint, indicate that there is substantial disagreement among the principals as to which activities are included within the definition of "lobbying." Common Cause alleged that this disagreement as to what are and are not reportable lobbying expenditures, results in inconsistent reporting of lobbying expenditures. According to Common Cause, this inconsistency, in turn, thwarts the Lobbying Act's statutorily-stated purpose of making public the amounts of money spent for lobbying. See § 5-7-101(1), MCA. In other words, it is

3

Common Cause's contention that unless there is consistency in the understanding of what must be reported, in the final analysis, the reports have no meaning.

In light of these two surveys, Common Cause filed a petition for rulemaking pursuant to § 2-4-315, MCA, on April 29, 1994, requesting the Commissioner to institute a rulemaking proceeding for the purpose of clarifying the definition of lobbying set forth in the Lobbying Act at § 5-7-102(6), MCA. Common Cause's petition also invokes the Commissioner's specific duty under § 5-7-111, MCA, to promulgate rules necessary to carry out the purposes of the Lobbying Act. In its petition for rulemaking, Common Cause set forth a proposed rule defining lobbying. On June 24, 1994, the Commissioner denied the petition on the basis that the rule proposed by Common Cause would alter, amend and enlarge the Lobbying Act in a way not envisioned by the Legislature and that the rule proposed by Common Cause was not reasonably necessary to effectuate the purpose of the Lobbying Act.

Thereafter, Common Cause filed an application for peremptory writ of mandamus and complaint for declaratory relief in the District Court. Common Cause requested a writ of mandamus requiring the Commissioner to institute a rulemaking procedure to promulgate rules specifying which activities are included in the Lobbying Act's definition of lobbying. Additionally, Common Cause sought a declaration that the Commissioner had violated the mandatory duty imposed on him by § 5-7-111, MCA, to "promulgate and publish rules necessary to carry out the provisions of [the

4

Lobbying Act] . . ." The Commissioner moved to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., and the District Court granted his motion. Common Cause appeals.

DISCUSSION

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317.

> A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

Lockwood, 900 P.2d at 317 (quoting Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762). The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Lockwood, 900 P.2d at 317.

We have stated that we do not favor the short circuiting of litigation at the initial pleading stage unless a complaint does not state a cause of action under any set of facts. Tobacco River Lumber Co. v. Yoppe (1978), 176 Mont. 267, 271, 577 P.2d 855, 857. "This is especially true when the cause of action is based upon a statute that has not been previously interpreted and where no underlying factual record has been developed." Smith v. Video Lottery Consultants, Inc. (1993), 260 Mont. 54, 57-58, 858 P.2d 11,

*13.* In the present case, the section of the Lobbying Act in question, § 5-7-111, MCA, has not previously been interpreted by this Court.

Resolution of this appeal hinges upon the interpretation of two statutory provisions: Section 5-7-111, MCA, and § 2-4-315, MCA. Section 5-7-111, MCA, provides as follows:

> Commissioner to make rules. (1) The commissioner shall promulgate and publish rules necessary to carry out the provisions of this chapter in conformance with the Montana Administrative Procedure Act and, in particular, shall provide rules necessary to allocate salary, expenses, and any other payments between lobbying activities and other activities not connected with lobbying for any person whose activities are not solely limited to lobbying.
> (2) Such rules shall be designed to effect and promote the purposes of this chapter, express or implied. Such rules shall be as simple and easily complied with as possible.

Common Cause argues that this statute mandates that the Commissioner "shall" publish rules necessary to carry out the provisions of the Lobbying Act and that the "necessity" is established by the well-pleaded, undisputed allegations of its complaint. Common Cause argues that § 5-7-111, MCA, creates a clear legal duty, the violation of which warrants the issuance of a writ of mandamus. The Commissioner focuses on the fact that he only has a duty to promulgate rules necessary to carry out the provisions of the chapter "*in conformance with the Montana Administrative Procedure Act*" (MAPA). He argues that MAPA, § 2-4-315, MCA, gives him discretion to determine whether the rule propounded by Common Cause is "necessary" or whether *any* rules are necessary. Section 2-4-315, MCA, provides as follows:

*6*

> **Petition for adoption, amendment, or repeal of rules.** An interested person or, when the legislature is not in session, a member of the legislature on behalf of an interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. . . . Within 60 days after submission of a petition, the agency either shall deny the petition in writing (stating its reasons for the denial) or shall initiate rulemaking proceedings in accordance with 2-4-302 through 2-4-305.

The Commissioner contends that he was within his discretion under the above statute when, within 60 days after receiving Common Cause's petition for rulemaking, he concluded that the rule proposed by Common Cause would impermissibly alter the statutory definition of the term "lobbying" enacted by the Montana legislature, and thus he denied the petition. He then contends that a writ of mandamus is not available to compel the exercise of a discretionary act.

The District Court concluded that under § 2-4-315, MCA, the Commissioner had discretion to determine which rules are "necessary" and appropriate; that the Commissioner **was** within his discretion in denying Common Cause's petition; and that the court could not issue a writ of mandate to compel the Commissioner to promulgate any specific rule.

The Commissioner held, and the District Court agreed, that the Commissioner had discretion to either deny the petition or initiate rulemaking proceedings. This conclusion was based upon the court's interpretation of § 2-4-315, MCA. We review that conclusion of law to determine whether or not it is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

7

1. Does § 2-4-315, MCA, grant the Commissioner discretion to deny a petition for mandatory rulemaking under § 5-7-111, MCA, without first initiating rulemaking proceedings?

Section 2-4-315, MCA, provides that an interested person "may petition an agency requesting the promulgation, amendment, or repeal of a rule. . . " It further provides that, "[w]ithin 60 days after submission of a petition, the agency either shall deny the petition in writing (stating its reasons for the denial) or shall initiate rulemaking proceedings in accordance with 2-4-302 through 2-4-305." Implicit in the District Court's ruling is the reasoning that § 2-4-315, MCA, addresses petitions for the promulgation of "a rule," and since Common Cause's Petition proposed a specific rule, the statutory discretion to deny the petition was triggered without any need for a rulemaking proceeding. We determine that, although § 2-4-315, MCA, does grant the Commissioner discretion to deny a petition in so far as it relates to a proposed rule, it does not grant the Commissioner that same discretion with regard to a broader request that the Commissioner engage in mandatory rulemaking to determine whether any rules, whether proposed by a petitioner or not, are necessary.

Although Common Cause's petition does set forth a specific rule for consideration, that rule is nothing more than a proposal. We do not read Common Cause's petition as solely requesting the adoption of a specific rule -- rather, the petition merely proposes a rule in the context of its request that the Commissioner initiate rulemaking to determine the necessity of rules in general. Under the Administrative Rules of Montana, a petition for rulemaking must

8

include "the rule the petitioner requests the agency to promulgate, amend or repeal." Mont. Admin. R. 1-3-205(a)(iii). In order to comply with the prerequisites of MAPA, Common Cause had to submit a proposed rule. However, that did not mean that the scope of rules the Commissioner could consider was thereby limited to the proposed rule. The proposed rule was nothing more than a model or point of departure. N.A.A.C.P. v. Federal Power Comm'n (D.C.Cir. 1975), 520 F.2d 432, 434, aff'd, *425* U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976).

Both the Commissioner and District Court erred in assuming that the only matter presented by the petition was the proposed rule. In addition to setting forth a proposed rule, the administrative petition clearly asks the Commissioner to initiate a rulemaking proceeding, pursuant to § 5-7-111, MCA. Likewise, in its application for preliminary writ of mandamus and complaint for declaratory relief in District Court, Common Cause seeks to compel the Commissioner to initiate rulemaking proceedings. It does not seek to compel the adoption of any specific rule proposed by Common Cause. We hold that although § 2-4-315, MCA, grants the Commissioner the discretion to deny the petition in so far as it pertains to a proposed rule, there is no such discretion to summarily deny a petition which seeks to invoke the Commissioner's legal obligation to engage in *mandatory* rulemaking under § 5-7-111, MCA.

In Common Cause v. Federal Election Comm. (D.D.C. 1987), 692 F. Supp. 1391, Common Cause challenged the Federal Election

9

Committee's (the Commission) decision to deny a petition for rulemaking associated with the use of "soft money" in connection with federal elections. The court held that any improper allocation of non-federal funds by a state committee would be a violation of the Federal Elections Campaigns Act (FECA), 2 U.S.C. § 431, *et seq.* "Yet, the Commission provides no guidance whatsoever on what allocation methods a state or local committee may use; the potential for abuse, intended or no, is obvious." Common Cause, 692 F. Supp. at 1396. The court determined that when the agency denies rulemaking in a way that "flatly contradicts Congress's express purpose, the court may -- indeed must -- intervene and correct the agency." Common Cause, 692 F. Supp. at 1396 (citations omitted). Although recognizing that a revision of the Commission's regulations was warranted, the court noted that Common Cause's proposals did not limit or define the scope of the Commission's consideration. The court stated:

> However, the court need not go so far as to order the Commission to adopt the proposals of Common Cause, which appear to go beyond what the FECA requires in this area. Instead, the court need only require the Commission to review Common Cause's Petition for Rulemaking in light of this opinion, with an eye to revising 11 C.F.R. §§ 102.5 and 106.1, as they relate to the portions of the 1979 FECA amendments discussed above.

Common Cause, 692 F. Supp. at 1396.

Similarly, although the Commissioner of Political Practices is under no compulsion to adopt the rules proposed by Common Cause, he cannot refuse to adopt any rules without first having engaged in a rulemaking procedure to determine whether any rules are "necessary."

10

2. Is Mandamus an appropriate remedy?

The issuance or denial or a writ of mandate calls for a conclusion of law which we review to determine if it is correct. Franchi v. County of Jefferson (Mont. 1995), 908 P.2d 210, 212, 52 St.Rep. 1229, 1230; Becky v. Butte-Silver Bow Sch. Dist. 1 (Mont. 1995), 906 P.2d 193, 195, 52 St.Rep. 1154, 1155. Pursuant to § 27-26-102, MCA, a two-part standard applies to the issuance of a writ of mandate. Franchi, 908 P.2d at 212; State ex rel. Chisholm v. District Court (1986), 224 Mont. 441, 443, 731 P.2d 324, 325. First, the writ is available when the party requesting it is entitled to the performance of a clear legal duty by the party against whom the writ is sought. Becky, 906 P.2d at 195. Second, if there is a clear legal duty, the district court must grant the writ if there is no plain, speedy, and adequate remedy available in the ordinary course of law. Franchi, 908 P.2d at 212; State ex rel. Cobbs v. Montana Dep't of Social and Rehabilitative Servs. (Mont. 1995), 906 P.2d 204, 206, 52 St.Rep. 1166, 1167; § 27-26-102(2), MCA. In Chisholm, we clarified the inquiry: "A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it." Chisholm, 731 P.2d at 325.

Regarding the first standard for mandamus, does the Commissioner have a clear legal duty to initiate rulemaking, the Commissioner contends that it is within his discretion to determine what rules are "necessary" as that term is used in § 5-7-111, MCA.

11

We do not interpret the Commissioner's discretion that broadly. The "as necessary" language of § 5-7-111, MCA, does not give the Commissioner discretion to ignore the initial mandate that he "shall" adopt rules. He cannot choose to take no action without first holding a hearing to determine whether rules are necessary. In Commonwealth of Pennsylvania v. National Ass'n of Flood Insurers (3d Cir. 1975), 520 F.2d 11, the Third Circuit Court addressed a similar issue. The State of Pennsylvania, on behalf of its citizens, sued the flood insurers and the Secretary of Housing and Urban Development for mandamus and injunctive relief for their failure to publicize the availability of flood insurance prior to the floods in question. As in the case *sub judice*, the district court dismissed the complaint and the plaintiff appealed. The federal law required that:

> The Secretary shall from time to time take such action as may be necessary in order to make information and data available to the public and to any state or local agency or official, with regard to (1) the flood insurance program, its coverage and objectives. . .

Commonwealth, 520 F.2d at 26 (citing 42 U.S.C. § 4020) This statute, like the Montana statute presently at issue, contains the mandatory "shall" followed by the "as necessary" language. In interpreting the federal law, the Third Circuit held:

> These paragraphs [42 U.S.C. § 40201, when read together, set forth a sufficient allegation which, *if proved*, warrants mandamus relief. . . . Although § 4020 does contain language of discretion normally not subject to review under a petition for mandamus, the discretion authorized pertains only to the time and manner of acting. Specifically. the provision mandates that "the Secretary *shall* . . . *take* such action as may be necessary . . . ."

<u>Commonwealth,</u> 520 F.2d at 26 (emphasis added, citation omitted).

As to the significance of the phrase "as may be necessary," the court stated:

> The inclusion of the phrase "as may be necessary" does not permit disobedience to the initial directive, implicit in the statutory framework, requiring the Secretary to first consider whether or not action should be taken.

<u>Commonwealth,</u> 520 F.2d at 26 (citations omitted).

In holding that mandamus was appropriate, the Third Circuit concluded that, although the Secretary had the final decision as to whether action was required, he could not make that decision without first weighing the considerations.

> It is sufficient if the Secretary, having considered whether action should be taken, then determines that no action is necessary. But the Secretary cannot avoid taking the first step of evaluating the necessity of disseminating information. It is that step to which the Commonwealth has, in part, addressed its complaint. It is only at a hearing that the facts bearing upon this allegation may be developed. Accordingly, mandamus may issue to require the exercise of permissible discretion, . . although the manner in which the discretionary act is to be performed is not to be directed by the Court.

<u>Commonwealth,</u> 520 F.2d at 26-27 (citation omitted).

We adopt a similar analysis in the context of the Lobbying Act. Although § 5-7-111, MCA, requires the Commissioner to adopt rules "as necessary," that discretionary phrase does not permit the Commissioner to circumvent the initial directive that he "shall" adopt rules. The Commissioner has the ultimate discretion to determine what, if any, rules are necessary. He cannot, however, in the face of a petition alleging the necessity for rules, deny the petition without first conducting a hearing as to the question

13

of necessity, this is his clear legal duty.

Assuming the truth of the allegations in Common Cause's complaint, it has established that the Commissioner has a clear legal duty to engage in rulemaking. The question then becomes, does Common Cause have a plain, speedy, and adequate remedy in the ordinary course of law? <u>Chisholm</u>, 731 P.2d at 325. A review of MAPA reveals that there is no provision for appeal from, or judicial review of, the Commissioner's decision to not initiate rulemaking under § 5-7-111, MCA. Thus Common Cause has no plain, speedy and adequate remedy in the ordinary course of law.

Common Cause's complaint sets forth sufficient allegations which, if proven, warrant mandamus relief. <u>See</u> Carpet, Linoleum & Resilient Tile, Etc. v. Brown (10th Cir. 1981), 656 F.2d 564, 568, (citing <u>Commonwealth,</u> 520 F.2d at 26-27). We hold that mandamus can lie to compel the Commissioner to conduct rulemaking procedures before he makes his decision as to whether new or additional rules are necessary. The District Court erred in dismissing Common Cause's complaint, thus, we reverse and remand the matter for further proceedings consistent with this opinion.

_W. William Burghut_
                Justice

We concur.


_____
        Chief Justice


14

_____

_____
William E Hunter

_____
Terry Trieweiler

_____

_____
Justices

Justice Charles E. Erdmann dissenting.

I respectfully dissent. The majority decision has effectively removed the discretionary authority granted to the Commissioner under § 2-4-315, MCA, and then determines that since no discretion is involved, mandamus is an appropriate remedy.

As correctly noted by the majority, resolution of this appeal involves the interpretation of §§ 5-7-111 and 2-4-315, MCA. Section 5-7-111, MCA, is the legislative grant of rulemaking authority to the Commissioner and provides:

> (1) The commissioner shall promulgate and publish rules necessary to carry out the provisions of this chapter in conformance with the Montana Administrative Procedure Act and, in particular, shall provide rules necessary to allocate salary, expenses, and any other payments between lobbying activities and other activities not connected with lobbying for any person whose activities are not solely limited to lobbying.
> (2) Such rules shall be designed to effect and promote the purposes of this chapter, express or implied. Such rules shall be as simple and easily complied with as possible.

This statute requires the Commissioner to promulgate rules "necessary" to carry out the provisions of the Lobbying Act in conformance with the provisions of the Administrative Procedure Act (MAPA). This reference to MAPA leads us to § 2-4-315, MCA, which provides:

> An interested person or, when the legislature is not in session, a member of the legislature on behalf of an interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. . . . Within 60 days after submission of a petition, the agency either shall deny the petition in writing (stating its reasons for the denial) or shall initiate rulemaking proceedings in accordance with 2-4-302 through 2-4-305.

Common Cause recognized the interplay between these two statutes when it specifically referenced and filed its "Petition

16

for Rulemaking" under § 2-4-315, MCA. There can be no question that § 5-7-511, MCA, requires that the Commissioner follow the provisions of MAPA (§ 2-4-315, MCA) when considering and promulgating rules

Although § 2-4-315, MCA, does not require an interested person to file a proposed rule, § 1.3.205(a)(iii), ARM, requires that a petition for rulemaking include "the rule the petitioner requests the agency to promulgate, amend or repeal." While the majority recognizes that Common Cause submitted a proposed rule in their petition, it found that both the Commissioner and the District Court erred in assuming that the only matter presented by the petition was the proposed rule. The majority then goes on to interpret Common Cause's petition to be a general request for rulemaking--to determine whether rules are necessary--and not simply a request that the Commissioner adopt the rule submitted by Common Cause. Having found that the petition was not a request for adoption of a particular rule the majority holds:

> We determine that, although § 2-4-315, MCA, does grant the Commissioner discretion to deny a petition in so far as it relates to a proposed rule, it does not grant the Commissioner that same discretion with regard to a broader request that the Commissioner engage in mandatory rulemaking to determine whether any rules, whether proposed by a petitioner or not, are necessary.

A review of Common Cause's petition reveals that it was indeed a request for the adoption of a specific rule. The petition initially requested that the Commissioner adopt rules that define and specify "lobbying" activities under the Montana Lobbying Act. The petition goes on to state:

> Montana Common Cause files this petition for rulemaking to address a void in the existing Lobbying Act

17

rules: specifically, the failure of the rules to define actions that constitute "lobbying" or "lobbying activities." . . . Without rules that provide examples clarifying the definition of "lobbying" set forth in the Lobbying Act at § 5-7-102(6) MCA, it is certain that these disagreements will remain unresolved, and will continue to result in inconsistent and inaccurate reporting of lobbying expenditures. Promulgation of the rules requested below will help achieve the goal envisioned by I-85 of full disclosure of lobbying expenditures.

. . .

First, Montana Common Cause requests the Commissioner to add a new § 101, and to renumber existing §§ 101 throush 109 as new §§ 102 through 110.

Common Cause then included a three page, single-spaced proposed rule in their petition. The final sentence of the petition states: "WHEREFORE, Montana Common Cause requests the Commissioner of Political Practices to promulgate the rules defining lobbying set forth in section 3 of this Petition." This rule proposal clearly comes under the provisions of § 2-4-315, MCA, and is not a broad request for the Commissioner to determine whether general, unspecified rules were necessary.

The Commissioner is not required to initiate the formal rule making process under § 2-4-315, MCA, in every instance. The statute grants the Commissioner the discretion to either initiate rulemaking proceedings or deny the petition. The effect of the majority's opinion is to repeal the language in § 2-4-315, MCA, which grants the Commissioner the discretion to deny a petition.

In this case the Commissioner exercised his discretion under § 2-4-315, MCA, by denying the petition and stating his reasons for the denial. While the substance of the Commissioner's actions are

18

not before us, there is no question that the Commissioner properly followed the procedural requirements of § 2-4-315, MCA.

The majority opinion also creates a new category of rulemaking request not envisioned nor authorized by the legislature. The majority holds that a request can be made to an agency authorized to promulgate rules to "engage in mandatory rulemaking to determine whether any rules . are necessary." As noted, the Commissioner's rule making authority is derived from § 5-7-111, MCA, which requires the Commissioner to promulgate rules in "conformance with the Montana Administrative Procedure Act." MAPA does not envision that a vague general request can be made to an agency to "determine whether rules are necessary," which request would then mandate initiation of the formal rulemaking procedure. The majority fails to cite any authority in MAPA or in the Lobbying Act for this new procedure.

Finally, since I believe that this is a petition for rulemaking under § 2-4-315, MCA, and since even the majority concedes that the Commissioner has discretion under that statute, I would find that a writ of mandate is not a proper remedy. This Court has consistently held that mandamus is only available to compel performance of a clear legal duty not involving discretion. Jeppeson v. Dept. of State Lands (1983), 205 Mont, 282, 667 P.2d 428.

I would affirm the District Court.

_____
                 Justice

Chief Justice J. A. Turnage:

I join in the dissent of Justice Erdmann.

Justice Karla M. Gray, dissenting.

I respectfully dissent from the Court's opinion.

First, I cannot agree with the Court's implicit suggestion that the petition Common Cause filed with the Commissioner was one for a general rulemaking proceeding pursuant to § 5-7-111, MCA. The petition was made pursuant to § 2-4-315, MCA, and specifically requested promulgation of the proposed rules contained therein. As the Court recognizes, § 2-4-315, MCA, authorized the Commissioner-- in his discretion--to either timely deny the petition in writing or institute rulemaking proceedings thereon in accordance with §§ 2-4-302 through 2-4-305, MCA. The Commissioner exercised his statutory discretion and denied the petition, stating as reasons that the proposed rules would impermissibly alter, amend and enlarge the statutory provisions and that the rules were not reasonably necessary to promote the purposes of the Lobbying Act. The Montana Administrative Procedure Act (MAPA) does not provide for judicial review of a decision by the Commissioner pursuant to § 2-4-315, MCA.

Nor can I agree with the Court's several judicial revisions of § 2-4-315, MCA. The statute is clear, and rather limited, in authorizing a petition by an interested person requesting the promulgation of "a rule." Yet the Court at least implicitly rewrites § 2-4-315, MCA, to authorize or encompass a petition requesting the Commissioner to initiate generalized rulemaking proceedings pursuant to § 5-7-111, MCA, thereunder. Nothing in § 2-4-315, MCA, authorizes such a petition.

Having recast both the request originally filed by Common

20

Cause and the statute under which it was submitted, the Court then adds to § 2-4-315, MCA, a requirement that receipt of a request for rulemaking thereunder mandates the Commissioner to initiate a rulemaking procedure to determine whether rules are "necessary" pursuant to § 5-7-111, MCA. Such a requirement exists in neither statute.

Moreover, the Court judicially revises § 2-4-315, MCA, to provide Common Cause with a remedy it has not requested--namely, a "rulemaking proceeding" to provide a record upon which the Commissioner may again exercise his discretion regarding whether rulemaking is necessary. Common Cause specifically sought mandamus in the District Court to compel the Commissioner to institute a rulemaking proceeding "for the purpose of promulgating and publishing rules that specify activities encompassed within the Act's definition of lobbying." The Court refuses to grant mandamus in accord with Common Cause's request, determining that the ultimate decision regarding what rules, if any, are "necessary" under § 5-7-111, MCA, remains a matter within the Commissioner's discretion. While I agree that the requested mandamus cannot issue and that the "necessity" determination ultimately rests with the Commissioner, I cannot agree to the creation of an unrequested remedy not authorized by any statute. It is this Court's obligation to either affirm the District Court's denial of the requested writ of mandamus or reverse that denial. It is not our job to rewrite the requested relief, create a remedy, and then rely on those actions to reverse the District Court.

21

Finally, I disagree with the Court's analysis of mandamus and its applicability here. The Court apparently concedes that our cases apply the "clear legal duty" aspect of mandamus narrowly, and correctly notes that the statutory directive of § 5-7-111, MCA, contains the discretionary "necessary" component. The Court then relies primarily on Commonwealth, in which the Third Circuit Court of Appeals determined that the phrase "as may be necessary" might support mandamus. There, the allegation was that the Secretary of Housing and Urban Development totally failed to perform certain statutory duties. The Third Circuit determined that "as may be necessary" required the Secretary to "first consider whether or not action should be taken." Commonwealth, 520 F.2d at 26. The Third Circuit then stated that "[i]t is sufficient if the Secretary, having considered whether action should be taken, then determines that no action is necessary." Commonwealth, 520 F.2d at 26. Finally, the Third Circuit concluded that "mandamus may issue to require the exercise of permissible discretion, although the manner in which the discretionary act is to be performed is not to be directed by the court." Commonwealth, 520 F.2d at 27 (citations omitted).

In the case presently before us, the Commissioner already has considered whether action should be taken and has exercised his discretion to determine that it should not. Thus, this case is factually distinguishable from Commonwealth. The lack of exercise of "permissible discretion"--which was the basis of the Third Circuit's determination in Commonwealth that mandamus might issue--

22

does not exist in this case.

Finally, the Court's apparent reliance on the "hearing" required in Commonwealth to support its creation of a required "rulemaking proceeding" for the purpose of determining "necessity" is misplaced. As I read that case, the hearing required by the Third Circuit "at which the facts bearing upon this allegation may be developed" is the hearing in the federal district court on remand to determine the propriety of mandamus. See Commonwealth, 520 F.2d at 27. The hearing was required because of the allegation that the Secretary had failed to perform the statutory duties, including the total failure to exercise discretion. Thus, the hearing on remand in Commonwealth was to determine whether the Secretary had considered and evaluated the necessity of taking action.

Here, the Commissioner has exercised his permissible discretion. Nothing more can properly be accomplished by improperly issuing mandamus to require a "rulemaking proceeding" which is not authorized or contemplated by statute. If the Court's intent is to judicially create a "contested case" proceeding under MAPA where none has been provided by the legislature, in order to provide for judicial review of the Commissioner's subsequent exercise of discretion, it constitutes the kind of judicial activism which squarely intrudes into the legislature's domain

I would affirm the District Court's denial of the application for a writ of mandamus.

Justice

23