JUSTICE LEAPHART
delivered the Opinion of the Court.
Pursuant to § 2-4-315, MCA, Common Cause filed a petition for rulemaking with the Commissioner of Political Practices (Commissioner) requesting the Commissioner to institute a rulemaking proceeding to clarify the definition of lobbying set forth in the Montana Lobbying Act, § 5-7-102(6), MCA. The Commissioner denied the petition. Common Cause then filed a complaint in District Court seeking declaratory relief and a peremptory writ of mandamus. The District Court granted the Commissioner’s motion to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P. The court subsequently denied Common Cause’s motion to alter or amend the judgment. Common Cause appeals from the order dismissing its complaint and the order denying its motion to alter or amend the judgment. We reverse and remand.
Common Cause presents the following issues on appeal:
1. Does § 2-4-315, MCA, grant the Commissioner discretion to deny a petition for mandatory rulemaking under § 5-7-111, MCA, without first initiating rulemaking proceedings?
2. Is Mandamus an appropriate remedy?
BACKGROUND
Since this matter was dismissed under Rule 12(b)(6), M.R.Civ.P., prior to the filing of a responsive pleading or the completion of any discovery, the only facts before the District Court were those alleged *385 in Common Cause’s complaint. As alleged in the complaint, the background leading up to this litigation is as follows: For many years Common Cause has worked to assure full public disclosure of the amounts of money that persons spend to lobby Montana legislators and public officials. As part of this effort, Common Cause wrote and then worked to pass Initiative 85 revising Montana’s Lobbying Act and requiring that lobbying expenditures be reported to the Commissioner.
The Lobbying Act states that one of its purposes is “to require disclosure of the amounts of money spent for lobbying.” Section 5-7-101(1), MCA. In 1981, this Court recognized that the purpose of Initiative 85 was “to provide for the disclosure of money spent to influence action of public officials and to require elected officials to disclose their business interests.” Montana Automobile Ass’n v. Greely (1981), 193 Mont. 378, 399, 632 P.2d 300, 311. In order to gauge how effectively the Lobbying Act was accomplishing this purpose, Common Cause conducted two surveys, one in 1984 and one in 1994. These surveys sought responses from principals as to their understanding of what activities constituted “lobbying” under the Lobbying Act and, thus, which expenditures concerning those activities were required, by law, to be reported. The survey results, which were appended to the complaint, indicate that there is substantial disagreement among the principals as to which activities are included within the definition of “lobbying.” Common Cause alleged that this disagreement as to what are and are not reportable lobbying expenditures, results in inconsistent reporting of lobbying expenditures. According to Common Cause, this inconsistency, in turn, thwarts the Lobbying Act’s statutorily-stated purpose of making public the amounts of money spent for lobbying. See § 5-7-101(1), MCA. In other words, it is Common Cause’s contention that unless there is consistency in the understanding of what must be reported, in the final analysis, the reports have no meaning.
In light of these two surveys, Common Cause filed a petition for rulemaking pursuant to § 2-4-315, MCA, on April 29, 1994, requesting the Commissioner to institute a rulemaking proceeding for the purpose of clarifying the definition of lobbying set forth in the Lobbying Act at § 5-7-102(6), MCA. Common Cause’s petition also invokes the Commissioner’s specific duty under § 5-7-111, MCA, to promulgate rules necessary to carry out the purposes of the Lobbying Act. In its petition for rulemaking, Common Cause set forth a proposed rule defining lobbying. On June 24, 1994, the Commissioner denied the petition on the basis that the rule proposed by Common Cause *386 would alter, amend and enlarge the Lobbying Act in a way not envisioned by the Legislature and that the rule proposed by Common Cause was not reasonably necessary to effectuate the purpose of the Lobbying Act.
Thereafter, Common Cause filed an application for peremptory writ of mandamus and complaint for declaratory relief in the District Court. Common Cause requested a writ of mandamus requiring the Commissioner to institute a rulemaking procedure to promulgate rules specifying which activities are included in the Lobbying Act’s definition of lobbying. Additionally, Common Cause sought a declaration that the Commissioner had violated the mandatory duty imposed on him by § 5-7-111, MCA, to “promulgate and publish rules necessary to carry out the provisions of [the Lobbying Act] ....” The Commissioner moved to dismiss pursuant to Rule 12(b)(6), M.R.Civ.P., and the District Court granted his motion. Common Cause appeals.
DISCUSSION
A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317.
Amotion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.
Lockwood, 900 P.2d at 317 (quoting Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762). The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law. We review a district court’s conclusions of law to determine whether the court’s interpretation of the law is correct. Lockwood, 900 P.2d at 317.
We have stated that we do not favor the short circuiting of litigation at the initial pleading stage unless a complaint does not state a cause of action under any set of facts. Tobacco River Lumber Co. v. Yoppe (1978), 176 Mont. 267, 271, 577 P.2d 855, 857. “This is especially true when the cause of action is based upon a statute that has not been previously interpreted and where no underlying factual record has been developed.” Smith v. Video Lottery Consultants, Inc. *387 (1993), 260 Mont. 54, 57-58, 858 P.2d 11, 13. In the present case, the section of the Lobbying Act in question, § 5-7-111, MCA, has not previously been interpreted by this Court.
Resolution of this appeal hinges upon the interpretation of two statutory provisions: Section 5-7-111, MCA, and § 2-4-315, MCA. Section 5-7-111, MCA, provides as follows:
Commissioner to make rules. (1) The commissioner shall promulgate and publish rules necessary to carry out the provisions of this chapter in conformance with the Montana Administrative Procedure Act and, in particular, shall provide rules necessary to allocate salary, expenses, and any other payments between lobbying activities and other activities not connected with lobbying for any person whose activities are not solely limited to lobbying.
(2) Such rules shall be designed to effect and promote the purposes of this chapter, express or implied. Such rules shall be as simple and easily complied with as possible.
Common Cause argues that this statute mandates that the Commissioner “shall” publish rules necessary to carry out the provisions of the Lobbying Act and that the “necessity” is established by the well-pleaded, undisputed allegations of its complaint. Common Cause argues that § 5-7-111, MCA, creates a clear legal duty, the violation of which warrants the issuance of a writ of mandamus. The Commissioner focuses on the fact that he only has a duty to promulgate rules necessary to carry out the provisions of the chapter “in conformance with the Montana Administrative Procedure Act” (MAPA). He argues that MAPA, § 2-4-315, MCA, gives him discretion to determine whether the rule propounded by Common Cause is “necessary” or whether any rules are necessary. Section 2-4-315, MCA, provides as follows:
Petition for adoption, amendment, or repeal of rules. An interested person or, when the legislature is not in session, a member of the legislature on behalf of an interested person may petition an agency requesting the promulgation, amendment, or repeal of a rule. ... Within 60 days after submission of a petition, the agency either shall deny the petition in writing (stating its reasons for the denial) or shall initiate rulemaking proceedings in accordance with 2-4-302 through 2-4-305.
The Commissioner contends that he was within his discretion under the above statute when, within 60 days after receiving Common Cause’s petition for rulemaking, he concluded that the rule proposed *388 by Common Cause would impermissibly alter the statutory definition of the term “lobbying” enacted by the Montana legislature, and thus he denied the petition. He then contends that a writ of mandamus is not available to compel the exercise of a discretionary act.
The District Court concluded that under § 2-4-315, MCA, the Commissioner had discretion to determine which rules are “necessary” and appropriate; that the Commissioner was within his discretion in denying Common Cause’s petition; and that the court could not issue a writ of mandate to compel the Commissioner to promulgate any specific rule.
The Commissioner held, and the District Court agreed, that the Commissioner had discretion to either deny the petition or initiate rulemaking proceedings. This conclusion was based upon the court’s interpretation of § 2-4-315, MCA. We review that conclusion of law to determine whether or not it is correct. Carbon County v. Union Reserve Coal Co., Inc. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.
1. Does § 2-4-315, MCA, grantthe Commissioner discretion to deny a petition for mandatory rulemaking under § 5-7-111, MCA, without first initiating rulemaking proceedings?
Section 2-4-315, MCA, provides that an interested person “may petition an agency requesting the promulgation, amendment, or repeal of a rule. ...” It farther provides that, “[w]ithin 60 days after submission of a petition, the agency either shall deny the petition in writing (stating its reasons for the denial) or shall initiate rulemaking proceedings in accordance with 2-4-302 through 2-4-305.” Implicit in the District Court’s ruling is the reasoning that § 2-4-315, MCA, addresses petitions for the promulgation of “a rule,” and since Common Cause’s Petition proposed a specific rule, the statutory discretion to deny the petition was triggered without any need for a rulemaking proceeding. We determine that, although § 2-4-315, MCA, does grant the Commissioner discretion to deny a petition in so far as it relates to a proposed rule, it does not grant the Commissioner that same discretion with regard to a broader request that the Commissioner engage in mandatory rulemaking to determine whether any rules, whether proposed by a petitioner or not, are necessary.
Although Common Cause’s petition does set forth a specific rule for consideration, that rule is nothing more than a proposal. We do not read Common Cause’s petition as solely requesting the adoption of a specific rule — rather, the petition merely proposes a rule in the context of its request that the Commissioner initiate rulemaking to determine the necessity of rules in general. Under the Administrative *389 Rules of Montana, a petition for rulemaking must include “the rule the petitioner requests the agency to promulgate, amend or repeal.” Mont. Admin. R. 1-3-205(a)(iii). In order to comply with the prerequisites of MAPA, Common Cause had to submit a proposed rule. However, that did not mean that the scope of rules the Commissioner could consider was thereby limited to the proposed rule. The proposed rule was nothing more than a model or point of departure. N.A.A.C.P. v. Federal Power Comm’n (D.C.Cir. 1975), 520 F.2d 432, 434, aff’d, 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976).
Both the Commissioner and District Court erred in assuming that the only matter presented by the petition was the proposed rule. In addition to setting forth a proposed rule, the administrative petition clearly asks the Commissioner to initiate a rulemaking proceeding, pursuant to § 5-7-111, MCA. Likewise, in its application for preliminary writ of mandamus and complaint for declaratory relief in District Court, Common Cause seeks to compel the Commissioner to initiate rulemaking proceedings. It does not seek to compel the adoption of any specific rule proposed by Common Cause. We hold that although § 2-4-315, MCA, grants the Commissioner the discretion to deny the petition in so far as it pertains to a proposed rule, there is no such discretion to summarily deny a petition which seeks to invoke the Commissioner’s legal obligation to engage in mandatory rulemaking under § 5-7-111, MCA.
In Common Cause v. Federal Election Comm. (D.D.C. 1987), 692 F. Supp. 1391, Common Cause challenged the Federal Election Committee’s (the Commission) decision to deny a petition for rulemaking associated with the use of “soft money” in connection with federal elections. The court held that any improper allocation of non-federal funds by a state committee would be a violation of the Federal Elections Campaigns Act (FECA), 2 U.S.C. § 431, et seq. “Yet, the Commission provides no guidance whatsoever on what allocation methods a state or local committee may use; the potential for abuse, intended orno, is obvious.” Common Cause, 692 F. Supp. at 1396. The court determined that when the agency denies rulemaking in a way that “flatly contradicts Congress’s express purpose, the court may— indeed must — intervene and correct the agency.” Common Cause, 692 F. Supp. at 1396 (citations omitted). Although recognizing that a revision of the Commission’s regulations was warranted, the court noted that Common Cause’s proposals did not limit or define the scope of the Commission’s consideration. The court stated:
*390 However, the court need not go so far as to order the Commission to adopt the proposals of Common Cause, which appear to go beyond what the FECA requires in this area. Instead, the court need only require the Commission to review Common Cause’s Petition for Rulemaking in light of this opinion, with an eye to revising 11 C.F.R. §§ 102.5 and 106.1, as they relate to the portions of the 1979 FECA amendments discussed above.
Common Cause, 692 F. Supp. at 1396.
Similarly, although the Commissioner of Political Practices is under no compulsion to adopt the rules proposed by Common Cause, he cannot refuse to adopt any rules without first having engaged in a rulemaking procedure to determine whether any rules are “necessary.”
2. Is Mandamus an appropriate remedy?
The issuance or denial or a writ of mandate calls for a conclusion of law which we review to determine if it is correct. Franchi v. County of Jefferson (1995), [274 Mont. 272], 908 P.2d 210, 212; Becky v. Butte-Silver Bow Sch. Dist. 1 (1995), [274 Mont. 131], 906 P.2d 193, 195. Pursuant to § 27-26-102, MCA, a two-part standard applies to the issuance of a writ of mandate. Franchi, 908 P.2d at 212; State ex rel. Chisholm v. District Court (1986), 224 Mont. 441, 443, 731 P.2d 324, 325. First, the writ is available when the party requesting it is entitled to the performance of a clear legal duty by the party against whom the writ is sought. Becky, 906 P.2d at 195. Second, if there is a clear legal duty, the district court must grant the writ if there is no plain, speedy, and adequate remedy available in the ordinary course of law. Franchi, 908 P.2d at 212; State ex rel. Cobbs v. Montana Dep’t of Social and Rehabilitative Servs. (1995), [274 Mont. 157], 906 P.2d 204, 206; § 27-26-102(2), MCA. In Chisholm, we clarified the inquiry: “A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it.” Chisholm, 731 P.2d at 325.
Regarding the first standard for mandamus, does the Commissioner have a clear legal duty to initiate rulemaking, the Commissioner contends that it is within his discretion to determine what rules are “necessary” as that term is used in § 5-7-111, MCA. We do not interpret the Commissioner’s discretion that broadly. The “as necessary” language of § 5-7-111, MCA, does not give the Commissioner discretion to ignore the initial mandate that he “shall” adopt rules. He cannot choose to take no action without first holding a hearing to determine whether rules are necessary. In Commonwealth *391 of Pennsylvania v. National Ass’n of Flood Insurers (3d Cir. 1975), 520 F.2d 11, the Third Circuit Court addressed a similar issue. The State of Pennsylvania, on behalf of its citizens, sued the flood insurers and the Secretary of Housing and Urban Development for mandamus and injunctive relief for their failure to publicize the availability of flood insurance prior to the floods in question. As in the case sub judice, the district court dismissed the complaint and the plaintiff appealed. The federal law required that:
The Secretary shall from time to time take such action as may be necessary in order to make information and data available to the public and to any state or local agency or official, with regard to (1) the flood insurance program, its coverage and objectives. ...
Commonwealth, 520 F.2d at 26 (citing 42 U.S.C. § 4020). This statute, like the Montana statute presently at issue, contains the mandatory “shall” followed by the “as necessary” language. In interpreting the federal law, the Third Circuit held:
These paragraphs [42 U.S.C. § 4020], when read together, set forth a sufficient allegation which, if proved, warrants mandamus relief. ... Although § 4020 does contain language of discretion normally not subject to review under a petition for mandamus, the discretion authorized pertains only to the time and manner of acting. Specifically, the provision mandates that “the Secretary shall... take such action as may be necessary ...”
Commonwealth, 520 F.2d at 26 (emphasis added, citation omitted).
As to the significance of the phrase “as may be necessary,” the court stated:
The inclusion of the phrase “as may be necessary’ does not permit disobedience to the initial directive, implicit in the statutory framework, requiring the Secretary to first consider whether or not action should be taken.
Commonwealth, 520 F.2d at 26 (citations omitted).
In holding that mandamus was appropriate, the Third Circuit concluded that, although the Secretary had the final decision as to whether action was required, he could not make that decision without first weighing the considerations.
It is sufficient if the Secretary, having considered whether action should be taken, then determines that no action is necessary. But the Secretary cannot avoid taking the first step of evaluating the necessity of disseminating information. It is that step to which the Commonwealth has, in part, addressed its complaint. It is only at a hearing that the facts bearing upon this allegation may be *392 developed. Accordingly, mandamus may issue to require the exercise of permissible discretion,... although the manner in which the discretionary act is to be performed is not to be directed by the Court.
Commonwealth, 520 F.2d at 26-27 (citation omitted).
We adopt a similar analysis in the context of the Lobbying Act. Although § 5-7-111, MCA, requires the Commissioner to adopt rules “as necessary,” that discretionary phrase does not permit the Commissioner to circumvent the initial directive that he “shall” adopt rules. The Commissioner has the ultimate discretion to determine what, if any, rules are necessary. He cannot, however, in the face of a petition alleging the necessity for rules, deny the petition without first conducting a hearing as to the question of necessity, this is his clear legal duty.
Assuming the truth of the allegations in Common Cause’s complaint, it has established that the Commissioner has a clear legal duty to engage in rulemaking. The question then becomes, does Common Cause have a plain, speedy, and adequate remedy in the ordinary course of law? Chisholm, 731 P.2d at 325. A review of MAPA reveals that there is no provision for appeal from, or judicial review of, the Commissioner’s decision to not initiate rulemaking under § 5-7-111, MCA. Thus Common Cause has no plain, speedy and adequate remedy in the ordinary course of law.
Common Cause’s complaint sets forth sufficient allegations which, if proven, warrant mandamus relief. See Carpet, Linoleum & Resilient Tile, Etc. v. Brown (10th Cir. 1981), 656 F.2d 564, 568, (citing Commonwealth, 520 F.2d at 26-27). We hold that mandamus can lie to compel the Commissioner to conduct rulemaking procedures before he makes his decision as to whether new or additional rules are necessary. The District Court erred in dismissing Common Cause’s complaint, thus, we reverse and remand the matter for further proceedings consistent with this opinion.
JUSTICES NELSON, HUNT and TRIEWEILER concur.