No. 85-414

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

LOUISE N. GIDLEY, individually and
as Personal Representative of the
Estate of James I. Gidley, Deceased,

        Plaintiff and Appellant,

   -vs-

W. R. GRACE & COMPANY, a Connecticut
corporation, GRACE W. R. & COMPANY-
CONSTRUCTION PRODUCTS DIVISION, an
unincorporated association, and JOHN
DOES I THROUGH V.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Murphy, Robinson, Heckathorn & Phillips; I. James
Heckathorn argued, Kalispell, Montana

    For Respondents:

        Garlington, Lohn & Robinson; Gary L. Graham argued,
Missoula, Montana

---

        Submitted: February 18, 1986

        Decided: April 15, 1986

Filed: APR 15 1986

*Ethel M. Harrison*
_____
        Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Louise Gidley (wife), personal representative of deceased husband who allegedly died from asbestosis-related cancer, sought judgment against W.R. Grace & Company (Grace) under theories of wrongful death and misrepresentation. Upon motion by Grace, the Lincoln County District Court granted partial summary judgment dismissing the wrongful death action on the ground that the Montana Occupational Disease Act (MODA) provided the exclusive remedy. Wife appeals. We reverse and remand.

The sole issue on appeal is whether MODA was Mr. Gidley's exclusive remedy against Grace.

In July 1977, husband worked his last day for Grace. He died in May 1982. Wife alleges husband discovered he had cancer in June 1981, three years and eleven months after his last actual day of work. In July 1982, wife filed for benefits under MODA. The claim was denied by Grace because it was not timely filed within three years after husband's last actual day of work under §§ 39-72-403 and -406, MCA (1981). In June 1984, wife filed an action against Grace alleging wrongful death and misrepresentation. Later, the court dismissed the wrongful death action on the ground MODA provided the exclusive remedy.

Was MODA Mr. Gidley's exclusive remedy against Grace?

Our initial question is which MODA statutes control the claim; those in effect on Mr. Gidley's last actual day of work in July 1977, or those in effect at the alleged time of discovery of the disease in June 1981, or those in effect when the claim was originally filed in July 1982? As to MODA, this issue is novel. However, it has been considered a number of times in workers' compensation cases and the Court has concluded that the statute in effect at the date of

2

accident or injury controls. See Iverson v. Argonaut Insurance Company (1982), 198 Mont. 340, 342, 645 P.2d 1366, 1367; Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 86, 314 P.2d 866, 872; Chisholm v. Vocational School for Girls (1936), 103 Mont. 503, 510, 64 P.2d 838, 842-43. We conclude that the same rationale should be applied in MODA claims. Here, Mr. Gidley's last actual day of work was in July 1977. We therefore conclude that MODA statutes in effect on his last actual day of work are controlling.

MODA was originally enacted in 1959. Sections 92-1308 and 92-1331 governed rights of suit at common law until 1979, when § 92-1308 was amended and § 92-1331 was repealed. As applicable here, §§ 92-1308 and 92-1331 stated:

> 92-1308. <u>Right to compensation exclusive remedy</u>. The right to recover compensation pursuant to the provisions of this act for occupational diseases sustained by an employee and arising out of and in the course of his employment, whether resulting in death, or not, shall be the exclusive remedy therefor against the employer electing to be bound by and subject to this act, except as to such employees as shall reject this act as provided herein.

> 92-1331. <u>Rights of suit at common law</u>. There shall be no common-law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act, excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act.

Under § 92-1308, where an employer elected to be bound by MODA, the rights of an employee were limited to MODA unless an employee had rejected MODA. Affirmative rejection appeared to be the only means by which an employee could step out from under MODA and preserve a common law right of action. In substance § 92-1331 provided for a common law right of action when either the employee rejected coverage or the

employee was not eligible for compensation under the terms of MODA. Consequently, it appears the statutes are not in agreement on the issue of common law rights. One statute makes MODA the exclusive remedy unless affirmatively rejected. The other statute makes MODA the exclusive remedy unless MODA is rejected or the employee is not eligible for compensation under the terms of MODA. We conclude that the statutes are at least ambiguous, if not contradictory.

We therefore review MODA's legislative history. See Dorn v. Bd. of Trust. of Billings Sch. Dist. (Mont. 1983), 661 P.2d 426, 40 St.Rep. 348. In 1959, MODA was introduced as Senate Bill #112. As originally introduced, section 31 of Senate Bill #112 prohibited a common law right of action stating:

> There shall be no common law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act.

This proposal was debated in the Senate Committee on Labor and Compensation. Employee representatives presented objections that the employers were getting the benefit of waiver provisions at the expense of the common law rights of employees. As an example, under § 92-1330, if an employee failed a requested physical exam because the employee already had an occupational disease, then as a condition of employment the employer could request the employee to waive his rights to MODA benefits. In addition, even if an employee passed a requested medical examination, no benefits were granted unless the employee had worked a minimum of 1000 workshifts and also timely filed his claim within a prescribed period after his last actual day of work.

After debate, the Senate Committee of the Whole (Committee) recommended that the bill be amended. The

4

recommendation of the Committee regarding common law rights was approved by both the Senate and the House. Later, the bill was signed into law by the Governor and read:

> 92-1331. **Rights of suit at common law.** There shall be no common-law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act, excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act (adopted amendment underscored).

Section 92-1368, RCM (1947) as amended, provided that the MODA is to be liberally construed. Although this Court has not previously considered § 92-1368, it is directly comparable to a similar provision of the Workers' Compensation Act. Because both Acts involve the same employer-employee relationship, we conclude that the same rules of liberal construction which have been applied by the Court to Workers' Compensation Act cases should also be applied to MODA cases. We therefore conclude that MODA shall be liberally construed in favor of the claimant. Stokes v. Delaney & Sons, Inc. (1964), 143 Mont. 516, 519-20, 391 P.2d 698, 700. We also conclude that MODA is to be administered so as to give the employee the greatest possible protection within the purposes of the Act. Yurkovich v. Industrial Accident Board (1957), 132 Mont. 77, 83, 314 P.2d 866, 870. We further conclude that when MODA statutes are open to more than one interpretation, one of which is favorable to the employee and another against him, the Court may properly construe the statutes in a manner most favorable to the employee. Geary v. Anaconda Copper Mining Co. (1947), 120 Mont. 485, 489, 188 P.2d 185, 186.

5

While the legislative history on § 92-1308 and § 92-1331 may not be determinative of the issue, it does establish that the Committee carefully considered the question of common law rights of employees, and recommended an amendment that appears to allow common law action by an employee in two different circumstances. Notwithstanding the provisions of § 92-1308, our question is whether § 92-1331 allows a common law right of action in the present case because Mr. Gidley was not eligible for compensation under MODA. Applying the above described liberal rule of construction, we conclude that wife has a common law right of action in behalf of Mr. Gidley because he was not eligible for compensation under MODA.

This conclusion contradicts Anaconda Co. v. District C. of S.J.D. In and For C. of S.B. (1973), 161 Mont. 318, 506 P.2d 81, which was relied upon by the District Court. We have carefully considered Anaconda, and have studied both the majority and the dissent. We note that the majority in Anaconda did not explain why it concluded that where the employer had elected to be bound by MODA, such an election of necessity bound the employee. As is indicated by our more extensive analysis of MODA, we conclude that where the employee was not eligible for compensation because of the running of the limitation period, he comes within the statutory definition of an employee who is not eligible for compensation and is therefore entitled to his common law right of action. We essentially agree with the dissent in Anaconda that pointed out that if an employee was not eligible for compensation under MODA then common law remedies were preserved. We therefore expressly overrule Anaconda insofar as it is inconsistent with the holding of this opinion.

6

Under the applicable MODA statutes, a claim was required to be timely filed within three years from Mr. Gidley's last actual day of work. Wife alleges that Mr. Gidley did not discover his occupational disease until three years and eleven months after his last actual day of work. As a result, Mr. Gidley was not eligible under the terms of MODA for compensation. We hold his common law right of action was preserved. In doing so, we make no comments regarding the merits of the case itself.

We reverse the judgment of the District Court and direct the reinstatement of the plaintiff's claim for relief.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

7