**NO.** 94-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

RUTH L. LOCKWOOD, Individually and
as Personal Representative of the
Estate of DARRELL w. LOCKWOOD,

       Plaintiff and Appellant,

    -vs-

W. R. GRACE & COMPANY,

       Defendant and Respondent.

FILED

AUG 03 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Nineteenth Judicial District,
                In and for the County of Lincoln,
                The Honorable Robert S. Keller, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Tom L. Lewis, Attorney at Law, Great Falls,
          Montana

      For Respondent:

          Gary L. Graham; Garlington, Lohn & Robinson,
          Missoula, Montana


                   Submitted on Briefs:   January 26, 1995

                            Decided:   August 3, 1995

Filed:

                   Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Ruth Lockwood appeals from orders of the Nineteenth Judicial District Court, Lincoln County, granting W. R. Grace & Company's motion to dismiss her complaint with prejudice and denying her motion to alter or amend the judgment. We affirm in part, reverse in part and remand.

We restate the issues on appeal as follows:

1. Did the District Court err in concluding that <u>Gidley v. W. R. Grace & Co.</u> does not permit Lockwood to escape the exclusivity of the Occupational Disease Act of Montana?

2. Did the District Court err in granting Grace's motion to dismiss and in denying Lockwood's motion to alter or amend?

Darrell Lockwood (Darrell) worked for W. R. Grace & Company (Grace) in its vermiculite mine and mill for approximately ten years until he retired in 1984. Six years later, he was diagnosed with mesothelioma, an asbestos-specific cancer of the lining of the lungs. Darrell died in 1991. Ruth Lockwood (Lockwood), Darrell's widow, submitted a claim for beneficiaries' occupational disease benefits with Crawford & Company (Crawford), the adjuster for Grace's Occupational Disease Act of Montana (MODA) insurer. Crawford denied the claim on the basis that the three-year statute of limitations contained in § 39-72-403, MCA (1983), had run. Lockwood did not formally file a claim or petition for MODA benefits after Crawford's denial.

Lockwood filed survival and wrongful death actions against

Grace. Grace moved to dismiss Lockwood's complaint. It asserted that, taking Lockwood's allegations as true, her complaint stated an occupational disease claim for which compensation under the MODA was the exclusive remedy pursuant to § 39-72-305, MCA (1983). After full briefing and oral argument, the District Court granted Grace's motion to dismiss. The court concluded that Gidley v. W. R. Grace & Co. (1986), 221Mont. 36, 717 P.2d 21, does not preserve Lockwood's common law actions and thereby allow her to avoid MODA exclusivity.

Lockwood subsequently moved to alter or amend the judgment pursuant to Rules 52(b) and 59(g), M.R.Civ.P. The District Court denied the motion, concluding that Lockwood's complaint was insufficient to avoid MODA exclusivity via allegations that Grace committed an intentional tort. Lockwood appeals.

1. Did the District Court err in concluding that <u>Gidlev v. W. R. Grace & Co.</u> does not permit Lockwood to escape the exclusivity of the Occupational Disease Act of Montana?

The MODA generally provides for compensation by an employer to an employee disabled by reason of occupational disease arising out of the course of employment. <u>See</u>, <u>e.q.</u>, §§ 39-72-302 and 39-72-401, MCA. It applies to all employers and employees subject to Montana's Workers' Compensation Act. Section 39-72-301, MCA. The MODA statutes in effect on an employee's last day of work govern resolution of an occupational disease claim. <u>Gidlev,</u> 717 P.2d at 22. Because Darrell's last day of employment with Grace was in 1984, the 1983 version of the MODA is applicable here.

3

Section 39-72-305(1), MCA (1983), provides that the right to recover compensation for an employment-related occupational disease, whether resulting in death or not, is the exclusive remedy against a properly insured employer. In granting Grace's motion to dismiss, the District Court concluded that Lockwood's claim "is governed exclusively by the Occupational Disease Act."

Lockwood argues that, under Gidley, her causes of action are not barred by the MODA exclusivity provision. Her reliance on Gidley is misplaced.

The sole issue on appeal in Gidley was whether the MODA constituted the exclusive remedy for the widow of a deceased Grace employee's cancer-related death where the occupational disease allegedly was not discovered until after the MODA statute of limitations had run. The 1977 MODA statutes were applicable and our resolution of the issue turned on the proper interpretation of §§ 92-1308 and 92-1331, R.C.M. (1977). Section 92-1308, R.C.M. (1977), provided that the MODA was the exclusive remedy for employment-related occupational diseases "against the employer electing to be bound by and subject to this act . . . ;" § 92-1331, R.C.M. (1977), barred common law actions for employment-related occupational diseases "excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act. . " Gidley, 717 P.2d at 22.

Concluding that the two statutes were at least ambiguous, if not contradictory, we looked to the legislative history of the MODA

4

and to § 92-1368, R.C.M., which provided that the MODA was to be liberally construed. _Gidley_, 717 P.2d at 23. Applying the MODA statutes to the facts, we determined that the deceased employee's occupational disease claim was barred by the MODA statute of limitations and, therefore, that the employee was "not eligible for compensation" under the MODA. On that basis, we held that the common law right of action was preserved under § 92-1331, R.C.M. (1977), and that the MODA did not constitute the widow's exclusive remedy. _Gidley_, 717 P.2d at 23-24.

Our decision in _Gidley_ was dependent upon the ambiguous and contradictory statutes at issue there. Section 92-1331, R.C.M. (1977), was repealed in 1979. Section 92-1308, R.C.M. (1977), was amended in 1979 and recodified as § 39-72-305, MCA, which in the version applicable here states only that the MODA is the exclusive remedy against a properly insured employer for an occupational disease arising from employment. _See_ § 39-72-305(1), MCA (1983). Thus, while _Gidley_ and the present case share factual **similarities**, _Gidley_ has no application here and does not support Lockwood's argument that her causes of action are preserved and are not barred by § 39-72-305(1), MCA (1983).

We hold that the District Court did not err in concluding that _Gidley_ neither preserves Lockwood's common law actions nor permits her to escape the exclusivity of the Occupational Disease Act of Montana. Issues relating solely to whether Lockwood's MODA claim is barred by the applicable statute of limitations are not properly

before us in this action and must await resolution in the event Lockwood litigates a MODA claim.

>   2.   Did the District Court err in granting Grace's motion
>   to dismiss and in denying Lockwood's motion to alter or
>   amend?

Grace premised its motion to dismiss on the exclusivity of the MODA remedy. Lockwood's opposition to the motion largely tracked Grace's arguments, although she presented the allegations of her complaint at some length. The District Court granted Grace's motion and dismissed Lockwood's complaint with prejudice, concluding that Lockwood's claim is governed exclusively by the MODA.

Lockwood subsequently moved the court to alter or amend its order of dismissal. She argued, in pertinent part, that her complaint alleges facts bringing the action within the "intentional and active injurious conduct" exception to exclusivity. The District Court denied Lockwood's motion on the basis that the allegations in her complaint were insufficient to avoid exclusivity as a matter of law.

Our standard in reviewing a district court's ruling on a motion to dismiss under Rule 12(b)(6), M.R.Civ.P., is clear:

>   "A complaint should not be dismissed for failure to
>   state a claim unless it appears beyond doubt that the
>   plaintiff can prove no set of facts in support of his
>   claim which would entitle him to relief. A motion to
>   dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect
>   of admitting all well-pleaded allegations in the
>   complaint. In considering the motion, the complaint is
>   construed in the light most favorable to the plaintiff,

and all allegations of fact contained therein are taken as true."

Boreen v. Christensen (1994), 267 Mont. 405, 408, 884 P.2d 761, 762 (citation omitted). The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. Boreen, 884 P.2d at 762 (citation omitted).

Prior to scrutinizing the allegations at issue here, it will be helpful to review our recent cases holding that, in limited circumstances involving intentional harm, exclusivity can be avoided. In Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 7, 610 P.2d 717, 720, we explained that the intentional harm which creates the exception to exclusivity is harm which the employer "maliciously and specifically directed at an employee, or class of employee[,] out of which such specific intentional harm the employee receives injuries as a proximate result." Great Western, 610 P.2d at 720. Incidents resulting in employee injury which involve any lesser degree of intent to harm not directed specifically at the injured employee cannot provide a basis for recovery against the employer. Great Western, 610 P.2d at 720. Because only negligence, albeit wanton or malicious negligence, was alleged in Great Western, we held that the Workers' Compensation Act provided the plaintiff's exclusive remedy against the employer and that the complaint must be dismissed. Great Western, 610 P.2d at 719-20.

We revisited the Great Western principles in a summary judgment context in Noonan v. Spring Creek Forest Products (1985), 216 Mont. 221, 700 P.2d 623. There, the employee alleged an intentional tort against the employer. Relying on Great Western, the district court concluded that no genuine issues of material fact existed regarding whether the harm suffered was maliciously and specifically directed at the plaintiff. Noonan, 700 P.2d at 624. Prior to addressing the summary judgment issues, we observed that, unlike the plaintiff in Great Western, Noonan had included sufficient allegations in his complaint which, if proved, would remove the cause of action from the exclusivity provision of the Workers' Compensation Act. Noonan, 700 P.2d at 625.

In opposition to the employer's motion for summary judgment, Noonan submitted his own affidavit and deposition, setting forth facts that the machine with which he was required to work was known by the employer to be broken and that the employer knew the machine violated OSHA regulations. We determined that the facts established that the employer operated a hazardous and dangerous workplace; we concluded, however, that these facts could not be interpreted to mean that harm was specifically directed at Noonan. Noonan, 700 P.2d at 626.

In our recent decision in Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 866 P.2d 218, we addressed the intentional harm exception to exclusivity in the context of the dismissal of a complaint. There, we evaluated Blythe's allegation that his

8

employer knew of the defective and hazardous character of the medical devices he and other employees were required to use on the job. Blythe, 866 P.2d at 222. Analogizing closely to the situation presented in Noonan, we concluded that the plaintiff had failed to allege sufficient malicious and specific intent to harm him to survive a motion to dismiss pursuant to the exclusivity provision of the Workers' Compensation Act. Blythe, 866 P.2d at 225.

Against this backdrop, we scrutinize the allegations in Lockwood's complaint which the District Court determined were insufficient to escape MODA exclusivity as a matter of law. We take the allegations as true and address whether it appears beyond doubt that Lockwood can prove no set of facts in support of her claim which would entitle her to relief. See Boreen, 884 P.2d at '762.

Lockwood alleges, among other things, that: (1) Grace knew or had reason to know that extended inhalation or continuous ingestion of vermiculite and asbestos particles created a high degree of risk or harm to Darrell; (2) Grace willfully and deliberately concealed its knowledge from Darrell and his co-employees; (3) Grace failed to provide protective equipment sufficient to avoid the danger; (4) Grace advised Darrell and other employees that it was safe to work continuously in close proximity to vermiculite and asbestos particles; and (5) Grace's acts and omissions proximately caused Darrell's mesothelioma and, ultimately, his death.

9

In addressing whether Lockwood's allegations are sufficient to withstand Grace's motion to dismiss, we focus primarily on the first allegation listed above to determine its similarity to, or difference from, those we found insufficient to avoid exclusivity in our earlier cases. The pertinent portion of the allegation is stated as follows in Lockwood's complaint: "Although defendants <u>knew or had ample reason to know</u> that the defendants' acts or omissions created <u>a hish desree of risk or harm</u> to [Darrell]. . . " (Emphasis added.) Phrased in the alternative in several places, this allegation properly can be read in a number of different ways. Under <u>Boreen</u>, we must construe the allegations liberally in Lockwood's favor in the context of a motion to dismiss. <u>See Boreen</u>, 884 P.2d at 762.

We begin by reading the allegation as one that the defendants "had ample reason to know" that their acts or omissions created a high degree of risk or harm to Darrell. This portion of the alternatively pled knowledge element alleges a lesser degree of knowledge than the facts involved, and rejected as insufficient to constitute intentional harm, in <u>Noonan</u> and <u>Blvthe.</u> In <u>Noonan</u>, the employer knew of the broken planer, knew that it violated OSHA standards, and knew of previous accidents on the planer. <u>Noonan</u>, 700 P.2d at 624. Similarly, in <u>Blvthe,</u> the employer was alleged to know of the defective and hazardous nature of the equipment. <u>Blvthe,</u> 866 P.2d at 224. In neither case was the actual knowledge sufficient to avoid exclusivity. Thus, under our cases, it is

10

clear that an allegation of less than actual knowledge, such as the "had ample reason to know" portion of Lockwood's allegation, is insufficient as a matter of law to serve as the basis for avoiding MODA exclusivity.

Having excluded "had ample reason to know" from the allegation on which we are focusing, we are left with an allegation that the defendants knew their acts or omissions created a high degree of risk or harm to Darrell. The first alternative reading of the allegation is that Grace knew its acts created a high degree of risk to Darrell; the second is that Grace knew its acts created a high degree of harm to Darrell.

Applying these alternative readings to our earlier cases, it is clear that the first reading of the allegation is substantially similar to those involved in Noonan and Blythe. With regard to Noonan, the allegation that Grace knew its acts created a high degree of risk can be read to correspond to the knowing operation of a hazardous and unsafe workplace which we concluded did not constitute intentional harm directed at the claimant. See Noonan, 700 P.2d at 625-26. That allegation also corresponds to the allegation in Blythe that the employer knew of the defective and hazardous nature of the equipment it required its employees to use, but which we rejected as insufficient to meet the "intentional harm" requirement for avoiding exclusivity. See Blythe, 866 P.2d at 224. In Noonan, Blythe, and this reading of Lockwood's allegation, the allegation is essentially one of knowledge of risk

11

of harm.

The alternative reading of Lockwood's allegation--that Grace knew its acts created a high degree of harm to Darrell--differs significantly from a mere allegation of known risk. This reading of the allegation, particularly when taken together with the allegations of active concealment of this knowledge and affirmative advice to Darrell and other employees that continuous exposure to vermiculite and asbestos dust was safe, meets the requirement that a plaintiff allege "the presence of intentional <u>harm</u> which his employer maliciously and specifically directed at him . . . ." <u>See</u> <u>Blythe,</u> 866 P.2d at 221 (emphasis added).

These allegations are not mere allegations of intentional acts, omissions or conduct in the traditional tort context. Nor, of course, are they allegations of any desire by Grace to harm its employees. As Professor Larson cautions, intent to injure does not mean desire to injure; it means that the employer intended that the employee should undergo the injury--the exposure to the harm--of which the employer knew on a daily basis. 2A, Larson's <u>Worker's</u> <u>Compensation Law</u>, § 68.15(e), at 13-107. This constitutes the allegation of intentional harm specifically and maliciously directed at an employee.

Indeed, our conclusion here is foreshadowed by our reference to, and discussion of, People v. O'Neil (Ill. App. 1990), 550 N.E.2d 1090, <u>cert. denied</u>, 553 N.E.2d 400 (1990) (commonly referred to as <u>Film Recovery</u>), in <u>Blythe.</u> In <u>Film Recovery</u>, an employee

12

died after inhaling harmful fumes released in the course of the employer's manufacturing process; the employer knew that his employees were inhaling the harmful fumes and concealed his knowledge of the harm from the employees. We indicated that Professor Larson cited Film Recovery with approval as a case involving facts constituting an intentional tort sufficient to avoid exclusivity. Blvthe, 866 P.2d at 223.

The distinguishing factor between Film Recoverv and cases such as Blvthe is the employer's alleged knowledge that the employee is being injured, in the former, versus the employer's exposing the employee to risk of harm without certain knowledge that the employee is being or will be harmed, in the latter. See Blvthe, 866 P.2d at 223. Under this analysis, it is clear that Lockwood's allegation that Grace knew its acts created harm to Darrell meets both Professor Larson's definition of "intent to harm" and that of this Court in Blvthe.

Grace argues that Film Recover-v is inapplicable here because it is a criminal case involving neither an intentional tort nor exclusivity under legislation such as the MODA. While Grace's characterization of Film Recovery is correct, its argument misses the point. We do not rely on Film Recoverv as precedent for our determination that Lockwood's allegations are sufficient to avoid exclusivity. Rather, we address it only to indicate the type of facts which will support an intentional tort sufficient to avoid exclusivity and which must be alleged in a complaint to withstand

13

a motion to dismiss.

While the allegations of Lockwood's complaint are not particularly artful with regard to the intent to harm, they do include an allegation of "intentional harm" as we defined that **term** in <u>Great Western, Noonan</u>, and <u>Blythe</u>. Taking the allegations as true and construing them in a light most favorable to Lockwood, we conclude that the allegations of Lockwood's complaint are sufficient to avoid MODA exclusivity and withstand a motion to dismiss. Therefore, we hold that the District Court erred in granting Grace's motion to dismiss and, for that reason, abused its discretion in denying Lockwood's motion to alter or amend.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

Justice Fred J. Weber dissents as follows:

I dissent from the opinion's holding on issue 2 that the District Court erred in granting Grace's motion to dismiss. The key analysis is the interpretation of the following allegation in Lockwood's complaint:

> <u>Although defendants knew of or had ample reason to know</u> that the defendants' acts or omissions created a high degree of risk or harm to [Darrell] . . (Emphasis supplied.)

The opinion first analyzes the allegation by reading it as stating that the defendants had ample reason to know their acts or omissions created a high degree of risk or harm. The opinion concludes that such an allegation must be rejected as insufficient to constitute "intentional harm" under <u>Noonan</u> and <u>Blythe</u>. As a result, the opinion concludes that the allegation of less than actual knowledge such as an allegation that the defendants "had ample reason to know" is insufficient as a matter of law to serve as the basis for avoiding exclusivity. I agree with that analysis.

As a result, I am unable to agree with the balance of the analysis. The opinion excludes the phrase "had ample reason to know" from the analysis and considers whether an allegation that the defendants knew that the defendants' acts or omissions created a high degree of risk or harm is sufficient. That analysis would be appropriate if the alternatives had been alleged in different paragraphs or even in different sentences. However, I do not see how it can be applied here. In a single sentence, the plaintiff alleged that the defendants knew or had ample reason to know--that alternative allegation can be met by proving the defendants had

15

ample reason to know. I conclude it is not a positive allegation of sufficient knowledge on the part of the defendants. I conclude that, as in <u>Noonan</u> and <u>Blythe,</u> the allegations are not sufficient to demonstrate actual knowledge sufficient to avoid exclusivity.

I would, therefore, affirm the conclusion of the District Court that the complaint did not contain sufficient allegations of an intentional tort, and its reliance on <u>Blythe</u> for that conclusion.

_____
Justice

16