05-701

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 108

GENE NELSON,

        Plaintiff and Appellant,

   v.

CENEX, INC.; FARMERS UNION CENTRAL
EXCHANGE, INC.; HARVEST STATES
COOPERATIVE, INC.; HAROLD WILLIAMS;
LOUIS DAY; and DOES A-Z, inclusive,

        Defendants and Appellees.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis And Clark, Cause No. BDV-2003-543
                      Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                J. David Slovak, Mark M. Kovacich, Lewis, Slovak & Kovacich, P.C.,
                Great Falls, Montana

        For Appellees:

                John G. Crist, Eric Edward Nord, Crist Law Firm, LLC, Billings, Montana

                        Submitted on Briefs:  August 23, 2006

                                    Decided:  April 1, 2008

Filed:

                _____
                                 Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Gene Nelson appeals an order of the District Court for the First Judicial District, Lewis and Clark County, granting summary judgment in favor of Appellees and dismissing Nelson's cause of action stemming from his asbestos-related injury. We reverse and remand for further proceedings consistent with this Opinion.

¶2    Nelson raises the following issues on appeal:

¶3    1. Did the District Court err when it declined to apply *Gidley* and the pre-1979 Montana Occupational Disease Act[1] (the MODA) to afford Nelson a remedy in tort when no remedy exists under the workers' compensation system?

¶4    2. If the 1983 version of the MODA applies, did the District Court err when it denied Nelson a tort remedy for his asbestos-related disease when no remedy exists under the workers' compensation system?

¶5    3. Did the District Court err when it dismissed Nelson's tort claims founded on the intentional and malicious acts exception to workers' compensation exclusivity?

¶6    Because we find Issue 1 to be dispositive, we do not address Issues 2 and 3.

## Factual and Procedural Background

¶7    CHS, Inc. (CHS) is the successor in interest to Cenex, Inc., Cenex Harvest States Cooperative, Inc., and Farmers Union Central Exchange, Inc. Nelson worked full-time at the CHS refinery in Laurel, Montana, from August 18, 1952, until February 1, 1967. During the course and scope of this period of his employment with CHS, Nelson was

---

[1]    In 2005, the Montana Legislature merged the Occupational Disease Act into the Workers' Compensation Act.

2

required to work with and around asbestos and materials containing asbestos. At that time, CHS did not provide its workers with any protection from asbestos exposure. As a result, Nelson was exposed to, inhaled, and ingested asbestos fibers. Nelson left CHS in 1967 to pursue other employment opportunities.

¶8     On September 22, 1980, Nelson returned to CHS and worked sporadically on a part-time basis during 1980, 1982, 1983, 1984 and 1985. Nelson did not work with or around asbestos during this time.

¶9     In February 2002, Nelson was diagnosed with asbestos-related lung disease. Because Nelson's diagnosis occurred well past the deadline for filing a claim for occupational disease benefits, Nelson filed suit against CHS on September 19, 2003, for damages stemming from his asbestos-related disease. In his complaint, Nelson claimed multiple theories of liability including negligence, strict liability for abnormally dangerous activity, failure to provide a safe place to work, and negligent and/or intentional infliction of emotional distress. Nelson's complaint also included an intentional acts claim based on the intentional and malicious acts exception to workers' compensation exclusivity. In its answer to Nelson's complaint, CHS raised a number of affirmative defenses including immunity from suit premised on workers' compensation exclusivity.

¶10    Nelson filed a motion for partial summary judgment in July 2005 requesting that the District Court strike CHS's affirmative defense regarding exclusivity. At about the same time, CHS filed its own motion for summary judgment seeking to dismiss Nelson's

3

tort claims on the basis of exclusivity and to dismiss Nelson's intentional acts claim for failure to provide proof to support the claim.

¶11 The District Court entered an Order granting CHS's summary judgment motion and dismissing Nelson's claims on October 7, 2005. Two weeks later, the court issued a memorandum outlining its rationale for granting summary judgment and dismissing the complaint. In its memorandum, the court concluded that the 1983 version of the MODA applied in this case and, as such, the MODA was the exclusive remedy for Nelson's claims. The court also rejected Nelson's theory of liability predicated on the intentional and malicious acts exception to workers' compensation exclusivity.

¶12 Nelson appeals from the District Court's order granting summary judgment in favor of CHS and dismissing his complaint.

**Standard of Review**

¶13 We review an order granting summary judgment de novo using the same M. R. Civ. P. 56 criteria applied by the district court. *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 24, 304 Mont. 356, ¶ 24, 22 P.3d 631, ¶ 24 (citing *Spinler v. Allen*, 1999 MT 160, ¶ 14, 295 Mont. 139, ¶ 14, 983 P.2d 348, ¶ 14). Summary judgment is proper only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 16, 321 Mont. 432, ¶ 16, 92 P.3d 620, ¶ 16 (citing M. R. Civ. P. 56(c)).

¶14 To determine the existence or nonexistence of a genuine issue of material fact, we look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Lee*, ¶ 24 (citing *Erker v. Kester*, 1999 MT 231, ¶ 17, 296 Mont. 123, ¶ 17,

988 P.2d 1221, ¶ 17). In addition, all reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing the summary judgment motion. *Lee*, ¶ 25.

¶15 The party seeking summary judgment has the burden of demonstrating a complete absence of any genuine factual issues. *Lee*, ¶ 25. Where the moving party is able to demonstrate that no genuine issue as to any material fact remains in dispute, the burden then shifts to the party opposing the motion. *Lee*, ¶ 26. To raise a genuine issue of material fact, the party opposing summary judgment must present material and substantial evidence rather than merely conclusory or speculative statements. *Lee*, ¶ 26. As this Court has previously observed, "proof is required to establish the absence of genuine issues of material fact; a party may not rely on the arguments of counsel." *Montana Metal Buildings, Inc. v. Shapiro*, 283 Mont. 471, 476, 942 P.2d 694, 697 (1997) (citing *City of Bozeman v. AIU Ins. Co.*, 262 Mont. 370, 378, 865 P.2d 268, 273 (1993)).

¶16 In addition, we review a district court's conclusions of law to determine whether they are correct. *Montana Pet. Tank Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 32, 341 Mont. 33, ¶ 32, 174 P.3d 948, ¶ 32 (citing *State Farm Mut. Auto. Ins. Co. v. Gibson,* 2007 MT 153, ¶ 9, 337 Mont. 509, ¶ 9, 163 P.3d 387, ¶ 9).

**Discussion**

¶17 *Did the District Court err when it declined to apply Gidley and the pre-1979 MODA to afford Nelson a remedy in tort when no remedy exists under the workers' compensation system?*

¶18 The District Court determined that the 1983 version of the MODA applied to Nelson's claims because his last day of employment with CHS was in 1985, and the

5

statute in effect on the last day of work controls. Consequently, the court determined that Nelson's tort claims were barred because the 1983 version of the MODA provides that the MODA is Nelson's exclusive remedy.

¶19 Nelson argues that the District Court erred in applying the 1983 version of the MODA because the time period from 1980 to 1985 when he returned to work part-time with CHS had no connection to his industrial disease. Nelson contends that the District Court should have followed the "last injurious exposure doctrine" and applied the version of the MODA in effect when he was actually exposed to the asbestos.

¶20 Section 39-72-305, MCA (1983), the statute the District Court determined applied in this case, provides, in pertinent part:

> **Right to compensation exclusive remedy – uninsured employers.** (1) The right to recover compensation pursuant to the provisions of this chapter for occupational diseases sustained by an employee and arising out of and in the course of employment, whether resulting in death or not, *is the exclusive remedy* therefor against an employer who is properly insured under the Workers' Compensation Act and the Occupational Disease Act of Montana. [Emphasis added.]

However, the 1983 version of the MODA also contained the following statute of repose:

> **39-72-403. Time when claims must be presented.** (1) When a claimant seeks benefits under this chapter, his claims for benefits must be presented in writing to the employer, the employer's insurer, or the division *within 1 year from the date the claimant knew or should have known that his total disability condition resulted from an occupational disease.* When a beneficiary seeks benefits under this chapter, his claims for death benefits must be presented in writing to the employer, the employer's insurer, or the division within 1 year from the date the beneficiaries knew or should have known that the decedent's death was related to an occupational disease.
> (2) The division may, upon a reasonable showing by the claimant or a decedent's beneficiaries that the claimant or the beneficiaries could not have known that the claimant's condition or the employee's death was

6

related to an occupational disease, waive the claim time requirement up to an additional 2 years.

(3) Notwithstanding the provisions of subsections (1) and (2) of this section, *no claim to recover benefits under this chapter may be maintained unless the claim is properly filed within 3 years after the last day upon which the claimant or the deceased employee actually worked for the employer against whom compensation is claimed.* [Emphasis added.]

Consequently, under the 1983 version of the MODA, Nelson has no remedy at all for his claims.

¶21 Nelson argues that pursuant to *Gidley v. W.R. Grace & Co.*, 221 Mont. 36, 717 P.2d 21 (1986), the pre-1979 version of the MODA applies to his claims and, as such, his common law right of action has been preserved.

¶22 In *Gidley*, we held that, upon expiration of the deadline for filing a claim under the MODA, the injured employee could pursue a tort action against the employer under the provisions of the MODA in effect prior to its amendment in 1979. *Gidley*, 221 Mont. at 39-40, 717 P.2d at 23-24. In that case, Louise Gidley (Louise) filed a wrongful death action against W.R. Grace & Company (W.R. Grace) on behalf of the estate of her deceased husband James, who died from asbestos-related cancer in May 1982. Louise alleged that James had been exposed to asbestos while at his job with W.R. Grace. *Gidley*, 221 Mont. at 37, 717 P.2d at 22.

¶23 W.R. Grace maintained workers' compensation coverage for its employees. However, to obtain workers' compensation benefits, the applicable MODA provisions required that a claim be filed within three years of the employee's final day of work. James' last day of work was in July 1977. He was not diagnosed with work-related asbestos disease until June 1981, eleven months after the expiration of the claim filing

7

deadline. Consequently, James was not eligible for compensation under the MODA. *Gidley*, 221 Mont. at 37, 717 P.2d at 22.

¶24 Louise filed an action against W.R. Grace in June 1984 alleging wrongful death and misrepresentation. W.R. Grace asserted workers' compensation exclusivity as a defense to civil liability. The District Court dismissed the tort action on the grounds that the MODA provided the exclusive remedy. *Gidley*, 221 Mont. at 37, 717 P.2d at 22.

¶25 The issue on appeal in that case was whether the MODA afforded the exclusive remedy for Louise's claims against W.R. Grace. However, before deciding that issue, the Court had to determine which MODA statutes controlled the claim: those in effect on James' last actual day of work in July 1977; those in effect at the time he was diagnosed in June 1981; or those in effect when Louise filed a claim for benefits under the MODA in July 1982. Since this question was a novel one under the MODA, the Court in *Gidley* looked to workers' compensation cases for guidance as that question had been considered a number of times in that context. The Court concluded that, under the WCA, the statute in effect on the date of the accident or injury controls. The Court further concluded that the same rationale should be applied in MODA claims, thus the Court determined that the MODA statutes in effect on James' last actual day of work in July 1977 were controlling. *Gidley*, 221 Mont. at 37-38, 717 P.2d at 22.

¶26 The MODA was originally enacted in 1959. The following sections of the MODA governed an employee's rights of suit at common law until 1979, when § 92-1308, RCM, was amended and § 92-1331, RCM, was repealed:[2]

> **92-1308. Right to compensation exclusive remedy.** The right to recover compensation pursuant to the provisions of this act for occupational diseases sustained by an employee and arising out of and in the course of his employment, whether resulting in death, or not, shall be the exclusive remedy therefor against the employer electing to be bound by and subject to this act, except as to such employees as shall reject this act as provided herein.

> **92-1331. Rights of suit at common law.** There shall be no common-law right of action for damage from occupational disease against an employer who elects to come under the provisions of this act, excepting for those employees not eligible for compensation under the terms of this act, or who reject coverage of this act.

The Court concluded in *Gidley*, that these statutes were at least ambiguous, if not contradictory, stating that "[o]ne statute makes MODA the exclusive remedy unless affirmatively rejected. The other statute makes MODA the exclusive remedy unless MODA is rejected or the employee is not eligible for compensation under the terms of MODA." *Gidley*, 221 Mont. at 38, 717 P.2d at 23-24. Hence, while § 92-1308, RCM, purported to limit an employee's remedy to the MODA, § 92-1331, RCM, allowed the employee to pursue a common law right of action when the employee was not eligible for compensation under the MODA.

¶27 Acknowledging the contradiction created by §§ 92-1308 and -1311, RCM, the Court examined the legislative history of both statutes and applied the liberal rule of

---

[2] In 1978, § 92-1308, RCM, was recodified as § 39-72-305, MCA, and § 92-1311, RCM, was recodified as § 39-72-308, MCA.

construction mandated by the MODA to hold that, under the pre-1979 provisions of the MODA, upon expiration of the deadline for filing an occupational disease claim, an injured employee may pursue a tort action against the employer. *Gidley*, 221 Mont. at 39-40, 717 P.2d at 23-24.

¶28 CHS argues on appeal that *Gidley* does not apply in this case, because this Court's decisions in *Lockwood v. W.R. Grace & Co.*, 272 Mont. 202, 900 P.2d 314 (1995), *Grenz v. Fire and Cas. of Connecticut*, 278 Mont. 268, 924 P.2d 264 (1996), and *Hardgrove v. Transportation Ins. Co.*, 2004 MT 340, 324 Mont. 238, 103 P.3d 999, specifically state that the last day of work is controlling. However, CHS fails to recognize that the holdings in all of these cases stem from our holding in *Gidley*. Furthermore, none of these cases dealt with a scenario similar to the instant case where there were two separate and distinct periods of employment with the same employer.

¶29 Nelson worked for CHS during two different periods of time separated by almost thirteen years. It is undisputed that it was during Nelson's first period of employment with CHS (from 1952 to 1967) that he was exposed to asbestos. By his second period of employment with CHS (from 1980 to 1985), he was not exposed to asbestos as CHS had taken steps to remove the asbestos from the refinery. Thus, Nelson's injury occurred only during his first period of employment with CHS. This Court made it clear in *Gidley* that we were applying to the MODA the same rationale used in the WCA—i.e., that the date of accident or injury controls. However, because an occupational disease does not occur on one single day or at one exact time, but rather, is ongoing, we used the employee's last day of work—the last day the employee could possibly have been

10

exposed to asbestos—as the point in time from which the occupational disease claim would flow. Thus, we determined, in effect, that liability for and administration of a claim should correspond with the period in which the injurious exposure occurred.

¶30 Nelson points out in his brief on appeal, that had he been employed by anyone other than CHS from 1980 to 1985, the District Court would have had little trouble applying the pre-1979 MODA to his claim as his subsequent employment would have had no relevance to the causal exposure and resulting disease. Nelson maintains that the result should not change simply because he returned to employment with CHS in an unrelated capacity some thirteen years later. We agree that, as with the case of an unrelated employer, Nelson's subsequent employment with CHS bears no relevance to the exposure and disease at issue.

¶31 Moreover, in support of this argument, Nelson relies on the "last injurious exposure doctrine," which, he asserts, places the focus of the inquiry on the injurious mechanism. The "last injurious exposure doctrine," as codified in Montana, provides in pertinent part:

> Where compensation is payable for an occupational disease, the only employer liable is the employer in whose employment the employee was last injuriously exposed to the hazard of the disease.

Section 39-72-303(1), MCA (2003) (repealed in 2005 and merged within the WCA at § 39-71-407, MCA).

¶32 CHS argues that this doctrine has nothing to do with which version of the MODA applies to a worker's claim. Instead, CHS maintains that the "last injurious exposure doctrine" is applied to determine which employer or which insurance carrier is

responsible to pay benefits on a workers' compensation claim. While CHS is correct that this doctrine is applied to determine who is responsible to pay benefits, the statute is illustrative of the rationale that existed under the MODA after *Gidley* that liability for and administration of a claim should correspond with the period in which the injurious exposure occurred.

¶33 Based on the foregoing, for purposes of determining which version of the MODA applies to Nelson's claims, we conclude that his employment with CHS from 1980 to 1985 bears no relevance to his injurious exposure to asbestos and the occupational disease claim at issue here. Consequently, the correct version of the MODA to apply in this case is the version of the MODA in effect in 1967, when the period of Nelson's employment that included his injurious exposure to asbestos, ended. As such and as determined by this Court's decision in *Gidley*, under the pre-1979 version of the MODA, the MODA is not Nelson's exclusive remedy.

¶34 Accordingly, we hold that the District Court erred in granting CHS's motion for summary judgment and in dismissing Nelson's claims.

¶35 Reversed and remanded.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS