05-738

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 327

ELDON FLEMING,

          Petitioner and Appellant,

    v.

INTERNATIONAL PAPER CO.; as successor-
in-interest to CHAMPION INTERNATIONAL
CO., and LIBERTY NW INS. CORP.,

          Respondents and Appellees.

APPEAL FROM:    Montana Workers' Compensation Court, WCC No. 2005-1292
                Honorable Mike McCarter and Honorable James Jeremiah Shea,
                Presiding Judges

COUNSEL OF RECORD:

        For Appellant:

                Laurie Wallace, Bothe & Lauridsen, P.C., Columbia Falls, Montana

                Jon Heberling, McGarvey, Heberling, Sullivan & McGarvey, P.C.,
                Kalispell, Montana

        For Appellee International Paper Co.:

                Leo S. Ward, Chad E. Adams, Browning, Kaleczyc, Berry & Hoven, P.C.,
                Helena, Montana

                        Submitted on Briefs:  November 28, 2006

                                  Decided:  September 23, 2008

Filed:

_____
                           Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Eldon Fleming appeals a Decision and Order of the Workers' Compensation Court (WCC) granting International Paper Company's (IPC) Motion to Dismiss Fleming's occupational disease claim. We reverse and remand for further proceedings consistent with this Opinion.

¶2 Fleming raised the following issues on appeal:

¶3 1. Whether the WCC erred when it failed to apply the statute in effect on Fleming's last day of employment for IPC.

¶4 2. Whether retroactive application of § 39-72-403, MCA (2003), violates the contract clause of the Montana Constitution.

¶5 3. Whether more than one claim for compensation must be filed when there is only one occupational disease.

¶6 Because we find Issue 1 to be dispositive of this case, we do not address Fleming's other issues.

**Factual and Procedural Background**

¶7 Fleming worked at the lumber mill in Libby, Montana from 1960 until May 1998. During that time, he had three different employers: St. Regis Lumber Company (St. Regis), from 1960 to 1985; Champion International Paper Co. (Champion), from 1985 to November 1993; and Stimson Lumber Company (Stimson), from November 1993 to May 1998. Fleming was diagnosed with asbestos-related lung disease on April 2, 2001.

¶8 On November 29, 2001, Fleming filed a claim for occupational disease benefits against Stimson identifying the date of the "accident" as "1960-5/1998." On March 22,

2004, Fleming filed a "Claim for Compensation" listing Champion as the employer and identifying the date of the "accident" as "1961-1993." The insurers for both Stimson and Champion denied Fleming's claims for occupational disease benefits.

¶9 Fleming underwent a medical evaluation on September 21, 2004, at the request of the Department of Labor and Industry and pursuant to the occupational disease panel evaluation procedure set out in § 39-72-601, MCA. Based on his evaluation, Dr. Richard Sellman opined that Fleming was suffering from "minimal asbestos-related pleural thickening" that could be traced to Fleming's employment. However, Dr. Sellman further opined that based on the minimal amount of pleural disease, Fleming was "able to work in any type of work, based on his asbestos-related disease."

¶10 Fleming filed a Petition for Hearing with the WCC on April 14, 2005, naming as Respondents both IPC, as successor-in-interest to Champion (hereafter collectively referred to as IPC), and Liberty Northwest Insurance Corp. (Liberty), Stimson's workers' compensation insurer. In his petition, Fleming sought acceptance of liability by one or both of the Respondents and payment of applicable workers' compensation benefits.

¶11 IPC filed a Motion to Dismiss Fleming's Petition for Hearing on May 6, 2005,[1] claiming that Fleming "failed to file his occupational disease claim within two years as required by § 39-72-403(1), MCA (1993)." Fleming responded to IPC's motion by pointing out that § 39-72-403(1), MCA (1993), required filing a claim within two years

---

[1] Liberty also filed a Motion to Dismiss and a Motion for Summary Judgment on May 6, 2005, which the WCC subsequently denied. Neither of Liberty's motions is at issue in this appeal.

of "total disability." Fleming contended that the medical evidence did not yet establish that he was totally disabled, thus his March 22, 2004 claim was timely.

¶12 The WCC, in an Order dated July 8, 2005, agreed that Fleming's claim against IPC was timely filed pursuant to § 39-72-403, MCA (1993). However, the court then queried whether the claim was timely filed pursuant to § 39-72-403, MCA (2003), the statute in effect when Fleming filed his claim for occupational disease benefits against IPC. The court determined that since § 39-72-403, MCA, is a statute of limitations provision and is procedural, it could be applied retroactively. Thus, based on the 2003 version of the statute, the court concluded that Fleming's claim was not timely because it was filed more than one year after Fleming knew or should have known that his condition resulted from an occupational disease. Consequently, the WCC granted IPC's Motion to Dismiss Fleming's claim against IPC.

¶13 IPC also filed a Motion for Summary Judgment on May 20, 2005, arguing that, based on Dr. Sellman's evaluation, because Fleming has no physical restriction caused by his occupational disease that would impair his ability to work, he is not entitled to benefits. The WCC deemed that this motion was moot in light of the court's decision to grant IPC's Motion to Dismiss.

¶14 On August 2, 2005, Fleming filed a Motion for Reconsideration of the WCC's Order granting IPC's Motion to Dismiss. In his motion, Fleming argued that the WCC erred in dismissing his claim against IPC because: (1) Fleming's original claim against Stimson was timely and he was not required to file a second claim against IPC; (2) even if he was required to file a separate claim against IPC, that claim was also timely because

4

the occupational disease statutes in effect on Fleming's last day of employment control regardless of subsequent amendments to those statutes; and (3) retroactive application of the 2003 version of § 39-72-403, MCA, violates the Contract Clause of the Montana Constitution.

¶15 Because Fleming raised a constitutional challenge in his Motion for Reconsideration, he served a notice on the Attorney General on August 2, 2005, pursuant to M. R. Civ. P. 24(d). Two days later, the WCC also served the Attorney General with a Notice of Constitutional Challenge. However, on August 17, 2005, without affording the Attorney General the 20 days provided by M. R. Civ. P. 24(d) to respond to the Notice of Constitutional Challenge, the WCC issued its Order denying Fleming's Motion for Reconsideration.

¶16 Fleming then filed a second Motion for Reconsideration arguing that the WCC lacked jurisdiction to enter its August 17, 2005 Order because the Attorney General had not been given sufficient time to respond to the constitutional challenge pursuant to M. R. Civ. P. 24(d). The WCC denied Fleming's second Motion for Reconsideration on December 20, 2005, maintaining that it had never formally adopted M. R. Civ. P. 24(d), thus it was not bound by that Rule.[2] Fleming appeals.

**Standard of Review**

---

[2] While the WCC may look to the Montana Rules of Civil Procedure for guidance in procedural matters which are not encompassed in its own rules, *Murer v. State Comp. Mut. Ins. Fund*, 257 Mont. 434, 436, 849 P.2d 1036, 1037 (1993), it is not required to do so in every instance.

¶17    In reviewing decisions of the WCC, we employ two standards of review. We review the WCC's findings of fact to determine if they are supported by substantial credible evidence, and we review the WCC's conclusions of law to determine if they are correct. *Kruzich v. Old Republic Ins. Co.*, 2008 MT 205, ¶¶ 16-18, 344 Mont. 126, ¶¶ 16-18, 188 P.3d 983, ¶¶ 16-18 (citing *Harrison v. Liberty Northwest Ins. Corp.*, 2008 MT 102, ¶ 11, 342 Mont. 326, ¶ 11, 181 P.3d 590, ¶ 11; *Flynn v. Uninsured Employers' Fund*, 2005 MT 269, ¶ 11, 329 Mont. 122, ¶ 11, 122 P.3d 1216, ¶ 11). The WCC's determination of which statute of limitations applies is a conclusion of law.

**Discussion**

¶18    *Whether the WCC erred when it failed to apply the statute in effect on Fleming's last day of employment for IPC.*

¶19    The WCC determined that because statutes of limitation are procedural, the limitations period in effect at the time the petition is filed applies. Thus, the court held that since Fleming filed his occupational disease claim against IPC in 2004, the limitations period for filing his claim in this case is governed by 2003 law. The statute of limitation for filing a written claim for compensation under the Occupational Disease Act (ODA) is found at § 39-72-403, MCA. The 2003 version of this statute provides that

> [w]hen a claimant seeks benefits under this chapter, the claimant's claims for benefits must be presented in writing to the employer, the employer's insurer, or the department within 1 year from the date the claimant knew or should have known that the claimant's condition resulted from an occupational disease.

Section 39-72-403, MCA (2003). Consequently, because Fleming did not file his claim against IPC until three years after he learned he was suffering from asbestos-related lung disease, the WCC dismissed his claim as untimely.

¶20 Fleming asserts that retroactive application of the amended § 39-72-403, MCA, would cut off his claim without any prior notice. He maintains that the WCC should have applied the 1993 version of § 39-72-403, MCA, because his last day of work for IPC was in November 1993 and this Court has repeatedly held that the statutes in effect on an employee's last day of work govern the resolution of an occupational disease claim. *Grenz v. Fire and Cas. of Connecticut*, 278 Mont. 268, 271, 924 P.2d 264, 266 (1996) (citing *Lockwood v. W.R. Grace & Co.*, 272 Mont. 202, 205, 900 P.2d 314, 316 (1995)).

¶21 The 1993 and 2003 versions of § 39-72-403, MCA, are different and lead to different results. Section 39-72-403, MCA (1993), provides, in pertinent part:

> **Time when claims must be presented.** (1) When a claimant seeks benefits under this chapter, his claims for benefits must be presented in writing to the employer, the employer's insurer, or the department *within 2 years* from the date the claimant knew or should have known that his *total disability* condition resulted from an occupational disease. . . .
> (2) The department may, upon a reasonable showing by the claimant or a decedent's beneficiaries that the claimant or the beneficiaries could not have known that the claimant's condition or the employee's death was related to an occupational disease, waive the claim time requirement up to an additional 2 years. [Emphasis added.]

Thus, under this version of the statute, the event triggering the commencement of the limitations period is the claimant's knowledge that his total disability condition resulted from an occupational disease. Consequently, until the claimant becomes totally disabled

*and* is aware that his total disability resulted from an occupational disease, the limitations period does not commence running.

¶22    The Legislature amended § 39-72-403, MCA, in 1995, deleting any reference to "total disability" and shortening the time for filing a claim to one year.  The Legislature again amended this section in 1999 changing the waiver procedure of subsection (2) and substituting the insurer for the Department of Labor and Industry as the party responsible for granting a waiver.  In addition, the Legislature added a provision giving the WCC jurisdiction over disputes regarding claim filing time.[3]  Section 39-72-403, MCA, was not amended again until 2005, when the Legislature repealed the ODA (Title 39, chapter 72) and merged it within the Workers' Compensation Act (WCA) (Title 39, chapter 71).  Thus, the 2003 version of § 39-72-403, MCA, that the WCC attempts to apply in this case contains the same time limitation for filing an occupational disease claim as the 1995 version of the statute—i.e., "1 year from the date the claimant knew or should have known that the claimant's condition resulted from an occupational disease."

¶23    Unlike the 1993 version of § 39-72-403, MCA, under the statute in effect in 2003, a claimant's knowledge that he suffered from an occupational disease commenced the running of the one-year limitations period irrespective of whether the condition was disabling.  In the case *sub judice*, Fleming asserts that he was diagnosed with asbestos-related lung disease in April 2001.  Thus, under the 2003 statute, Fleming's 2004 claim

---

[3]    Although the 1999 Legislature added a provision in HB 592 (the bill amending § 39-72-403, MCA) making the bill retroactive, it appears that this retroactivity provision applies only to the 1999 amendments to the statute as noted above.

against IPC would be barred because the limitations period under that statute commenced to run in April 2001 and expired one year later.

¶24 Although the WCC determined that Fleming's last day of work with IPC was in 1993, it applied the later version of the statute of limitations to Fleming's claim against IPC and concluded that Fleming's claim was time barred. The WCC did so based on this Court's holding in *Fisher v. First Citizens Bank*, 2000 MT 314, 302 Mont. 473, 14 P.3d 1228, wherein we held that unless the Legislature expressly provides otherwise, a statute of limitations applies to all actions brought after the effective date of the statute irrespective of when the actions arose. We stated in *Fisher*:

> Statutes of limitations are generally considered laws of procedure. If the legislature passes a new statute of limitations, all rights of action are to be enforced under the new procedure regardless of when the cause of action accrued unless there is an explicit savings clause set forth in the statute.

*Fisher*, ¶ 14. In *Fisher*, we were asked to determine whether the 1991 amendments to § 30-3-122, MCA, which reduced the statute of limitations on demand note actions from eight years to six years applied to collection proceedings. *Fisher*, ¶ 8. The collection proceedings were not initiated until 1997, but the underlying financial obligations matured in March 1991.

¶25 In the instant case, because there are no savings clauses in the 1995 and 1999 amendments to § 39-72-403, MCA, the WCC determined that, based on *Fisher*, those amendments apply retroactively to Fleming's claim against IPC. Fleming argues that the WCC erred in retroactively applying these later versions of the statute to his claim because § 1-2-109, MCA, provides: "No law contained in any of the statutes of Montana

9

is retroactive unless expressly so declared." Fleming points out that the 1995 amendments do not contain a clause making those amendments retroactive. Moreover, § 1-2-109, MCA, does not distinguish between procedural and substantive laws.

¶26 For almost 75 years, this Court has held that the statutes in effect on the date of the accident or injury control in workers' compensation cases. *See e.g. Clark v. Olson*, 96 Mont. 417, 31 P.2d 283 (1934) ("case must be decided upon the law as it was when the accident occurred"); *Yurkovich v. Industrial Accident Board*, 132 Mont. 77, 314 P.2d 866 (1957) (the statutes in force when accident occurred applied rather than amended statutes effective six months after the accident); *Gaffney v. Industrial Accident Board*, 133 Mont. 448, 324 P.2d 1063 (1958) (the law in effect on the date the accidental injury occurred governs the extent of liability); *Simons v. C. G. Bennett Lumber Company*, 146 Mont. 129, 404 P.2d 505 (1965) (rate of compensation for work-related injury must be calculated based on the statutes in effect as of the date of the injury); *Hutchison v. General Host Corp.*, 178 Mont. 81, 582 P.2d 1203 (1978) (lower court erred in applying statutes not in effect at the time of the injury); *Trusty v. Consolidated Freightways*, 210 Mont. 148, 681 P.2d 1085 (1984) ("The statutes in effect at the time of the injury set the standards by which the benefits for the claimant are to be computed."); *Buckman v. Montana Deaconess Hosp.*, 224 Mont. 318, 730 P.2d 380 (1986) ("Workers' compensation benefits are determined by the statutes in effect as of the date of injury."); *Crittendon v. Terri's Rest. & Lounge*, 247 Mont. 293, 806 P.2d 534 (1991) ("The Workers' Compensation laws in effect at the time of a claimant's injury are controlling."); *Kuzara v. State Compensation Ins. Fund*, 279 Mont. 223, 928 P.2d 136

(1996) ("Workers' compensation laws in effect at the time of a claimant's injury are controlling."); *Powell v. State Compensation Ins. Fund*, 2000 MT 321, 302 Mont. 518, 15 P.3d 877 (statute in effect at the time of claimant's accidental injury governed claimant's benefits); *Simms v. State Compensation Ins. Fund*, 2005 MT 175, 327 Mont. 511, 116 P.3d 773 (the law in effect at the time of claimant's industrial accident governed his case).

¶27   We have applied the same rationale to cases involving occupational disease claims as we applied to workers' compensation claims—i.e., that the date of accident or injury controls. *Gidley v. W.R. Grace & Co.*, 221 Mont. 36, 37-38, 717 P.2d 21, 22 (1986). However, because an occupational disease is ongoing and does not occur on one single day or at one exact time, we used the employee's last day of work—the last day the employee could possibly have been exposed to the injurious mechanism—as the point in time from which the occupational disease claim would flow. "Thus, we determined, in effect, that liability for and administration of a claim should correspond with the period in which the injurious exposure occurred." *Nelson v. Cenex, Inc.*, 2008 MT 108, ¶ 29, 342 Mont. 371, ¶ 29, 181 P.3d 619, ¶ 29; *see Gidley*, 221 Mont. at 37-38, 717 P.2d at 22; *Grenz v. Fire and Cas. of Connecticut*, 278 Mont. 268, 924 P.2d 264 (1996); *Kessel v. Liberty Northwest Ins. Corp.*, 2007 MT 305, 340 Mont. 92, 172 P.3d 599.

¶28   We made no exception in these cases for statutes of limitation or other procedural statutes, and we decline to do so now. *See e.g. Carmichael v. Workers' Compensation Court*, 234 Mont. 410, 763 P.2d 1122 (1988) (statutes enacted after date of injury and mandating nonbinding mediation before party could file a petition in the WCC, could not

11

be retroactively applied to party's claim); *Hardgrove v. Transportation Ins. Co.*, 2004 MT 340, 324 Mont. 238, 103 P.3d 999 (the statute of limitations in effect on the employee's last day of work governed the resolution of his ODA claim).

¶29 Accordingly, on the narrow question of whether Fleming's claim against IPC should have been dismissed, we hold that the WCC erred when it failed to apply the statutes in effect on Fleming's last day of employment with IPC.

¶30 Because Fleming worked at the Libby mill under three different owners, this case also raised questions of whether Fleming's last day of work for IPC or his last day of work for Stimson should govern his claim based on the "last injurious exposure" doctrine, and whether Fleming is yet "totally disabled" and entitled to occupational disease benefits. However, these are questions that are more properly determined at trial after presentation of all of the evidence.

¶31 Reversed and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS